## OF THE

# SUPREME COURT OF APPEALS

## OF

# WEST VIRGINIA.

## CHARLESTON.

MERCHANTS COAL COMPANY *v.* BILLMEYER *et al.*

Submitted June 8, 1903.  Decided November 7, 1903.

1. CONTRACT.

It is not necessary for the vendees of certain timber rights to sign and acknowledge the contract conveying the same to them to render them legally bound. Acceptance and operation thereunder binds them to all its conditions and stipulations. (p. 10).

2. PLEADING.

On a bill filed to stay irreparable trespass a court of equity will not on evidence in the absence of allegations or pleading putting the same in issue, enforce the forfeiture of a contract relied on by the defendants, when such forfeiture is founded on unsettled questions of law and facts, and such contract together with the plaintiff's evidence fully negatives the allegations of irreparable damage contained in the bill. (p. 13).

Appeal from Circuit Court, Preston County.

Bill by the Merchants Coal Co. against A. E. Billmeyer *et al.* Decree for plaintiff and defendant appeals.

*Affirmed.*

P. J. GROGAN, for appellant.

J. A. BROWN AND R. H. GORDON, for appellees.

Dent, Judge:

The Merchants Coal Company, plaintiff, appeals from a decree of the circuit court of Preston County rendered on the 3rd day of April, 1901, dissolving its injunction and dismissing its bill filed against Allen E. Billmeyer and others.

The plaintiffs bill alleges that the defendants, Allen E. Billmeyer, Frank Billmeyer, John D. Billmeyer, and Andrew H. Billmeyer, were engaged in trespassing on a certain large tract of land belonging to plaintiff and valuable solely for its timber, and were unlawfully cutting and removing such timber and thereby irreparably damaging the plaintiff. A temporary injunction was awarded against the defendants.

They appeared and filed their answer admitting the principal allegations of the bill but setting up their right to the timber by virtue of the following contract with the plaintiff, to-wit:

"This agreement made this 27th day of October, in the year one thousand eight hundred and ninety-nine, between the Merchants Coal Company, of Baltimore city, a body corporate, of the first part, and Allen E. Billmeyer, Frank Billmeyer, of Orleans Cross Roads, in the State of West Virginia, and Andrew H. Billmeyer and John D. Billmeyer, of Little Orleans, in the State of Maryland, trading as the Billmeyer Lumber Company, of the second part; whereas, the party of the first part has upon the terms and conditions hereinafter set forth agreed to sell to the said parties of the second part, trading as aforesaid, all the sound and merchantable timber contained on a certain tract of land situate along the Baltimore and Ohio Railroad, at a point near Tunnelton, in West Virginia (known as the "Hammond" tract), containing about twelve hundred acres, witnesseth:

That in consideration of the sum of one dollar and the premises the said party of the first part does sell unto the said parties of the second part, trading as aforesaid, all of said timber, and the said parties of the second part do hereby purchase, at the price and upon the terms and conditions as follows:

1st. All timber to be cut into saw logs from twelve to sixteen feet long and to square eight inches at the top end or larger, or at the option of the purchaser less than eight inches can be included. All the logs to be scaled by what is known as "Doyle's Rule," by a person or persons agreed upon by the respective parties hereto.

2d.   All timber and logs cut and scaled hereunder, in each and every month, shall be paid for on the twentieth day of each and every succeeding month at the rate of five dollars per thousand feet, "B. M." for all the white and red oak and poplar, and three dollars and fifty cents per thousand feet, "B. M.," for all other merchantable and saleable timber, the party of the first part to have the right to cut and pull the bark from all the chestnut oak or rock oak in springs of 1900 and 1901.

.3d.   The said parties of the second part are to have free right of way for access to any part of said land and through said land for the purpose of cutting, manufacturing and shipping said lumber, timber or bark.

4th.   It is understood and agreed that if at any time the measurement or scale should be unsatisfactory to either of the respective parties hereto, the said party of the first part shall have the right to appoint a disinterested party or parties to do the work of scaling, provided that said party or parties will work at the mill at anything the said party of the second part may direct.   In which case said party or parties are to be paid equally for said scaling by the parties hereto, but the other work so done by said party or parties shall be paid for exclusively by the said parties of the second part.

5th.   It is understood and agreed that the said parties of the second part shall commence operations hereunder on or before November 1st, 1899, and the said parties of the second part do hereby agree and bind themselves to cut and move at least three hundred thousand feet per year, and that said parties of the second part do further bind themselves to cut and remove from said tract of land within four years from November 1st, 1899, all merchantable or saleable timber thereon.

6th.   The said parties of the second part to have the right during the continuance of this contract to cut any timber unfit for merchantable lumber for cross-ties, for which they shall pay to the party of the first part eight cents per tie upon the twentieth day of the month next succeeeding that in which the ties are cut.

7th.   It is further understood and agreed that if the said parties of the second part should fail to carry out and comply faithfully with all the terms and conditions of this agreement and should fail for the period of five days to make the pay-

ments hereunder, as herein prescribed, then the said party of the first part shall have the right at its option to declare this agreement null and void, and shall be entitled in case it should elect to annul this agreement to receive immediately all money that has accrued for all timber cut hereunder.

And the said party of the first part does hereby constitute and appoint D. Meredith Reese as its attorney, to acknowledge on its behalf this agreement.

In testimony whereof, the said party of the first part has caused its president to subscribe his name and affix its seal hereto, and the parties of the second part hereunto have subscribed their names and affixed their seals.

THOS. T. BOSWELL,          (Seal.)
                                   *President.*

FRANK BILLMEYER,          (Seal.)
JOHN BILLMEYER,          (Seal.)
ANDREW H. BILLMEYER,          (Seal.)
ALLEN E. BILLMEYER,          (Seal.)

Trading as the Billmeyer Lumber Company.

Test: Wilmer Emory.

State of Maryland,
          Baltimore City, to-wit:

On the third day of October, 1899, before me, the subscriber, a notary public of the State of Maryland, in and for Baltimore city aforesaid, personally appeared D. Meredith Reese, the attorney named and appointed in the foregoing agreement, to acknowledge said agreement to be the act of the said Merchants Coal Company.

Witness my hand and notarial seal.
          (L. S.)                    WILMER EMORY, *Notary Public.*

State of Maryland,
          Alleghany County, to-wit:

On the 27th day of October, in the year 1899, before me, the subscriber, a justice of the peace of the State of Maryland, in and for said county, personally appeared Allen E. Billmeyer, Frank Billmeyer, Andrew H. Billmeyer, and John D. Billmeyer, trading as the Billmeyer Lumber Company, and acknowledged the foregoing agreement to be their respective act.

P. H. FLETCHER, J. P.

To this the plaintiff replied generally thus putting in issue the validity of the contract alone.

In its proof the plaintiff admits the making of the contract on its part but insists it was not completed by reason of the failure or refusal of Allen E. Billmeyer, one of the defendants, to sign the same, and that therefore it was never legally binding. To sustain this contention the plaintiff further introduced in evidence the following option, telegrams and letters.:

Cumberland, Md., Queen City Hotel,

Sept. 26th, 1899.

I hereby agree to sell to the Billmeyer Lumber Company, of Orleans Cross Roads, W. Va., all the sound merchantable timber contained on a certain tract of land situate on the Baltimore and Ohio R. R., at a point near Tunnelton, W. Va., containing about twelve hundred acres, all the timber to be cut in saw logs, from 12 to 16 feet long, and to be squared eight inches at the top end and larger, or at the option of the purchaser, timber less than eight inches can be included. All logs to be scaled by what is known as "Doyle's Rule," by some person or persons who may be agreed upon by both buyer and seller, and to be paid for on the twentieth of each month for all logs cut and scaled during the previous month, at the rate of five dollars per thousand feet, "B. M.," for all white and red oak and poplar, and three dollars and fifty cents per thousand feet, "B. M.," for all other merchantable or salable lumber, reserving the right to cut down and peel on all the chestnut or rock oak, which would be done in the springs of 1900 and 1901; also give free right of way and access to any part of said land and through said land for the purpose of manufacturing and shipping said lumber or timber. This option or offer to be accepted on or before eight o'clock p. m., on Thursday, September 28th, 1899, by telegram or letter. If at any time the scale or measurement would be unsatisfactory the seller would have the right to appoint some disinterested party to do the work of scaling, provided that same man would work on mill at any thing the buyer may direct, in which case said man is to be paid equally by both buyer and seller. Operations to commence on said timber on or before November 1st, 1899, and to remove at least 300,000 feet per year, and all timber to be removed within four years from November 1st, 1899. Said tract is

known as the "Hammond Tract." If offer is accepted, contract to be written which would be legally binding between both parties. Any timber considered unfit for merchantable lumber, and that would be fit for cross-ties, the price to be eight cents per tie. This is only binding provided W. H. Watkins, Tunnelton, W .Va., can give a clear title for his interest.

MERCHANTS COAL COMPANY.

THOMAS T. BOSWELL, President.

Telegram:

Received at Baltimore, Md., No. 2 Domnell building, Sept. 28th, 1899.

Dated Oreleans Road, W. Va., 28th.

To Thomas T. Boswell, 33 S. Gay St., Balto:

We accept all conditions as written in your offer dated twenty-sixth instant and mail check for fifty dollars on agreement. Please wire answer and approval.

Billmeyer Lumber Company.

Letter:

Orleans Road, W. Va., Sept. 28th, 1899.

Mr. Thomas T. Boswell, President Merchants Coal Company, Baltimore, Md:

Dear Sir: Confirming telegram this p. m., we accept all conditions as written your offer dated twenty-sixth instant, and mail check for fifty dollars on agreement. Please wire answer and approval.

Respectfully yours,

Billmeyer Lumber Company,

Per A. E. B.

Orleans Road, W. Va., 10-27-1899.

Mr. Thomas Boswell, Baltimore, Md:

Dear Sir: We write you to-day in regard to the Tunnelton timber tract. Our Mr. Andrew and John and A. E. Billmeyer were up to see the timber, and just came home to-day. Also signed agreement which we mail to you. Mr. A. E. Billmeyer would not sign the agreement, as he says that he is not connected with the Billmeyer Lumber Company any more but you said when I was down at Baltimore it made no difference; it would be all right with us there. A. E. B., he has been deranged ever since he

went to have the agreement written, and unfit to do any business. May be we will have to send him for treatment. We will make agreements to go ahead to manufacture the lumber. We are very sorry this thing has happened. They cut one tree and had it scaled by Mr. Watkins, and it scaled 109 feet.

Hoping everything is satisfactory to you. If you get any letters from A. E. Billmeyer pay no attention to them, as he is most liable to say anything. You know how he was when he was to Baltimore.

We remain yours truly,

Billmeyer Lumber Company.,<br>Frank Billmeyer.

Oct. 30th, 1899.

Mess. Billmeyer Lumber Co., Orleans Cross Roads, W. Va:

Gentlemen: Your favor of the 27th and agreement to hand. On account of the turn things have taken we will have to demand a bond from you for the value of the timber, say $10,000. Unless this is arranged by the fifth of November (Nov. 5th), we shall have to call the deal off.

Yours very truly,<br>T. T. Boswell, (S).

Oct. 26th, 1899.

Billmeyer Lumber Co., Orleans Cross Roads, W. Va: ·
What do you intend to do about the lumber? Answer.

Merchants Coal Co.

Orleans Road, W. Va., 11-4-1899.

Mr. Thos. Boswell, President Merchants Coal Company, Baltimore, Md:

Your letter of 30th ult. at hand. In reply would say, we expect to cut the timber regardless of the bond which you require. Mr. Gordon, of Cumberland, says if Mr. A. E. Billmeyer is insane, as he is pronounced, would not sign the agreement, would not make any change to the Co. Hoping everything will be satisfactory to you, we will do as we agreed; you may depend upon that.

We are yours truly,<br>Billmeyer Lumber Co.,<br>Frank Billmeyer.

Received at Baltimore, Md., No. 2 Donnell Building, Oct. 9th, 1899.

Dated Orleans Road, W. Va., 9.

To Thomas T. Boswell, 33 S. Gay St:

A. E. Billmeyer has not come home. Know anything about where he is? Answer.

Frank Billmeyer.

Oct. 4th, 1899.

Billmeyer Lumber Co., Orleans Cross Roads, W. Va:

Gentlemen: We beg to hand you enclosed contract in duplicate and request that you kindly retain the copy on which we have placed our seal and sign the other copy and acknowledge it before a justice of the peace at Cumberland, Md., and mail it to this office. Please be advised that each one of your company should sign and acknowledge this document. Your prompt attention will oblige

Yours very truly,

Merchants Coal Co., G. W.——, Treas.

Nov. 6-9.

Billmeyer Lumber Co., Orleans Cross Roads, W. Va:

Do you intend to give bond? Otherwise we will turn the timber over to some one else. Answer quick.

T. T. Boswell.

November 7th-9.

Billmeyer Lumber Co., Orleans Roads, W. Va:

If you have not complied with agreement or executed contract we regard the deal as off, but if you have——bond we will consider the——. Answer quick.

Merchants Coal Company.

Old date, Nov. 2, 1899.

Orleans Road, W. Va., New Century, 12, 1900.

Mr. T. T. Boswell, President Merchants Coal Company, 33 S. Gay St., Baltimore, Md:

Sir: In answer to yours of recent date permit me to say that I would not sign the agreement and the other members signed it against my wishes. I am the general manager of the Billmeyer L. Co. and it was me that wrote the conditions of the

deal and I will hold you to said conditions exactly as written therein. I will see that our part is fulfilled to a very letter, and will hold your company responsible for your part of it. I will not give any bond as that was not mentioned in the original bargain. We have commenced operations all right and will cut and ship 300,000 feet or more within the next year. Awaiting your reply, I am,

Yours truly,    Allen E. Billmeyer.

Nov. 14th, 1899.

Mess. Billmeyer Lumber Co., Orleans Cross Roads, W. Va.

Gentlemen: We hand you enclosed our check for forty-five dollars, being in settlement of deposit which you sent us, namely, $50.00, less $5.00 advanced to your Mr. A. E. Billmeyer while in this city. On account of your not carrying out your contract we have a right to hold this check but as we wish to treat you fair, we return the same.

Yours very truly,    Merchants Coal Company,
G. W. Atkinson, Treas.

Orleans Road, W. Va., 11-20-1899.

Mr. Thomas Boswell, Baltimore, Md:

Dear Sir: We return the check you sent us. Our firm stands to the contract and expects to carry it out to the letter, and that Robert H. Gordon is the committee in lunacy of Allen H. Billmeyer. He will look after his intersts now.

Yours truly,    Billmeyer Lumber Co.,
F. B.

Orleans Cross Roads, W. Va., 2-28-1900.

Mr. Thomas T. Boswell, Pres. Merchants Coal Co., 33 S. Gay St., Baltimore, Md:

Dear Sir: We are ready to comply with all conditions of the contract with you, and will proceed to commence operations as soon as the proper arrangements can be made. Our Mr. A. E. Billmeyer will now sign the agreements, being restored to his usual good health. Please return the agreement you hold for his signature at the earliest date possible, and oblige,

Yours truly,    Billmeyer Lumber Co.,
A. E. B.

The defendant introduced no evidence.

On the bill, answer and general replication, the case is plainly for the defendants as the contract proves itself, the making thereof not being denied by affidavit.

The only question therefore is does the proof sustain the plaintiff's bill.

Without any pleading to this effect, the plaintiff claims that its contract has been avoided. First; because not signed by one of the defendants, who refused to sign the same, no doubt, because it departed materially from the original accepted proposition of sale, in that it reserved to the plaintiff an almost unlimited right of forfeiture.

It was wholly unnecessary for the defendants to sign or acknowledge such contract, unless for the purpose of compelling them to submit to its departure from the original proposition. Nor was it necessary for any of them to sign and acknowledge it for this purpose, but the mere acceptance thereof and acting thereunder would bind them to its provisions. *West Virginia C. & P. R. R. Co.* v. *M'Intire,* 44 W. Va. 210. Signature and acknowledgment on the part of the defendants were extra legal requirements not rendering the contract any more binding than acceptance otherwise. Nor had the plaintiff any right to demand of the defendants a bond for they are not shown to have been insolvent and such requirement is not included in the original proposition.

All the defendants including Allen E. accepted the contract in so far as it corresponded with the original proposition and even he afterwards waived his objections and agreed to it.

This they had a right to do and this substituted the final contract with its departures therefrom for the original accepted proposition.

The provision in the original proposition to-wit: "If offer accepted contract to be written which would be legally binding between both parties," did not authorize the use therein of the forfeiture clause nor the requirement of a bond without the consent of the defendants. The conclusion therefore must be that the contract relied on by the defendants was a binding contract between the plaintiff and defendants from the beginning in so far as it adhered to the original proposition.

Second: Because of the forfeiture of the contract by reason

of the failure of the defendants to begin operation thereunder in time.   Under this head plaintiff insists that because the defendants failed to commence operations on or before the 1st of November, 1899, as stipulated that it had the right to and did annul the contract and make a new contract similar in effect with Henry J. Wilmoth.

As Wilmoth is not a party thereto his rights are in no manner involved in this suit nor can they be considered in the determination hereof.   The plaintiff to sustain its contention under this head introduces in evidence the following correspandence between it and the defendants, to-wit:

March 1st, 1900.

Mess. Billmeyer Lumber Co., Orleans Cross Roads, W. Va:

Gentlemen:   Your favor of the 28th to hand and noted.   We beg to state that this property has been disposed of to Mr. Wilmoth, of Meyersdale, Pennsylvania, who has made payments and will commence operations about April 1st.   This was done as you did not comply with our agreement.

Yours very truly,

Merchants Coal Company,

Boswell.

Orleans Cross Roads, W. Va., July, 21st, 1900.

Mr. Thos. T. Boswell, Pres. Merchants Coal Co., Baltimore, Md:

Dear Sir:   Mr. A. H. Billmeyer and Frank Billmeyer are now at Tunnelton, W. Va., at work on the Hammond timber tract.   They have commenced cutting logs and will be ready for a scaler on Monday, July 30th, at which time we will commence sawing lumber.   Please advise us as to who you may want to do the scaling, or if we shall pick a man to be on hand at the time named.   We expect to cut from 300 to 400 thousand feet of the chestnut timber at once, and have leased the W. H. Watkins mill to do the sawing.   Please advise us promptly as to the scaler, as we do not want to be delayed on that account.

Yours Truly,

Billmeyer Lumber Co.

July 23d, 1900.

Mess. Billmeyer Lumber Co., Orleans Cross Roads, W. Va:

Dear Sirs:   Your favor of 21st to hand and noted.   You did

not carry out your agreement, consequently we have sold the timber to H. J. Wilmoth, Meyersdale, Pa., and do not know you in this matter. I have instructed our superintendent at Tunnelton when your parties commence cutting to have them arrested for tresspassing. If they insist on cutting we will have them prosecuted to the fullest extent of the law.

Yours very truly,

Merchants Coal Company,

Boswell.

It is not clear from the plaintiff's evidence but that the delay to commence operations was caused to some extent at least by the plaintiff's failure to adhere strictly to its original proposition and in unnecessarily requiring the defendants to sign and acknowledge a contract legally binding on them without such signatures and acknowledgments and also in demanding a bond of them before they should begin operations or the contract be binding.

All these extra legal requirements necessarily tend to produce confusion, uncertainty and delay.

The provision in the original proposition is in these words: "Operations to commence on said timber on or before November 1st, 1899, and to remove at least 300,000 feet per year and all timber to be removed within four years from November 1st, 1899."

Under this provision the failure to begin in time would not be sufficient to cause a forfeiture of the contract, although the defendants might be liable for all damages occasioned thereby. A removal of 300,000 feet within the remainder of the year would no doubt be deemed a full satisfaction thereof and compliance therewith.

Substantially, although more at length the same provision is contained in the final contract but the plaintiff had inserted a forfeiture clause to-wit: "It is further understood and agreed that if the said parties of the second part should fail to carry out and comply faithfully with all the terms and conditions of this agreement * * * * * * then the said party of the first part shall have the right at its option to declare this agreement null and void." It is under this provision that the plaintiff claims to have the right to declare the contract null and void because the defendants failed to commence operations on

or before the 1st day of November, 1899, although the plaintiff was at the time hindering operations under the contract by reason of its extra-legal requirements.

If the plaintiff had filed a bill to have the contract cancelled by reason of its forfeiture as a cloud on its title, the matter might have been properly presented and considered by a court of equity. But on evidence alone without allegations or pleadings or an opportunity for defendants to explain their delay in a matter purely pecuniary and subject to satisfaction in damages, it is asking too much of a court of equity to treat the solemn contract of the parties as a nullity. In short to enforce the forfeiture thereof against the defendants.

If the contract was clearly void and irreparable damage might be done, equity might possibly interfere. But where it is a matter of the lapse of time not plainly of the essence of the contract and the question of irreparable damages, or insolvency is not involved and any damages the plaintiff may have sustained are susceptible of pecuniary adjustment, equity will not interfere in doubtful cases but will leave the parties to their legal remedies.

On the question of the forfeiture of their contract by reason of unreasonable delay in beginning operations thereunder without fault of plaintiff, the defendants have the right to be impleaded and heard either at law or in equity and such question can not be justly determined from the evidence on the one side alone in the absence of proper allegations or pleadings. The bill seeks to enjoin an irreparable trespass. This ground is abandoned. But by the proof the plaintiff attempts to establish a forfeiture of its contract under which the defendants justify, thus raising doubtful questions both of law and fact and changing the nature of the case to be decided. Plaintiff might have presented this whole matter in its bill but it did not do so and it must endure the consequences of such failure. It is well settled that where the plaintiff's rights depend on disputed questions of fact or in disputed questions of law which have not been adjusted by a court of law, an injunction will be refused although a court of equity may be satisfied as to what is the correct conclusion of the law on the facts; 16 Am. & Eng. Enc. Law (2d Ed.) 358, 359, 360, 10 Enc. Pleading and Practice, 1095.

For these reasons the decree is affirmed.
                                                    *Affirmed.*