# CHARLESTON.

## West Virginia C. & P. R. Co. *v.* McIntire.

(Brannon, Judge, *concurring.*)

### Submitted September 2, 1897—Decided December 4, 1897.

1. Lease—*Covenant—Taxes.*

    Where a lease contains the following clauses: "To be held by the said party of the second part, his executors, administrators, and assigns, for the term of 99 years, beginning on the day of the date of these presents, he the said party of the second part, his executors, administrators, or assigns, yielding and paying unto the said W. Va. C. & P. R. R. Co., or its assigns, the rent or yearly sum of $24, and that in even and equal semiyearly installments, accounting from the 27th day of September, 1881, over and above all deductions for taxes and assessments of every kind levied or assessed, or to be levied or assessed, on said demised premises, or the rent issuing therefrom ;" and, in another portion of said lease, the lessee, for himself, heirs, executors, and assigns, covenants with said company, and its assigns, to pay the aforesaid rent, taxes, and assessments, when legally demandable,—if such lessee accepts such lease, and takes possession of the property thereunder, he is bound by said covenants to pay the taxes on said property and the buildings he may erect thereon. (p. 212.)

2. Lease—*Covenant—Taxes.*

    Such a covenant to pay taxes is a covenant which runs with the land. (p. 214.)

3. Lease—*Assignment—Assignees' Liability—Covenants.*

    An assignee of a lease is fixed with notice of its covenants, and takes the estate of his assignor *cum onere,* and each successive assignee of a lease, because of privity of estate, is liable upon covenants maturing and broken while the title is held by him. (p. 214).

4.  Lease—*Covenants—Assumpsit—Statute of Limitations.*
    An action of *assumpsit,* founded upon the covenants  contained in such lease, is not barred  in  five  years, against a lessee who has not signed the lease.   (p. 216).

Error to Circuit Court, Mineral County.

*Assumpsit*  by the West Virginia  Central  &  Pittsburg Railroad  Company  against  Elias  McIntire.    Plaintiff  had judgment.    Defendant brings error.

*Affirmed.*

F. M. Reynolds, for plaintiff in error.

C. W. Daily, for defendant in error.

English, Judge:

On the 27th day of September, 1881, the West Virginia Central & Pittsburg Railroad Company leased to Elias McIntire a certain lot in the town of Elk Garden, which is fully described in said lease, being No. 9, for the term of ninety-nine years, which lease ·contained the following clauses:  "He, the said party of the second part, his executors, administrators, or assigns, yielding and paying unto the said W. Va. C. & P. R. R. Co., or assigns, the rent or yearly sum of $24, and that in even equal semi-yearly installments, accounting from the 27th day of Sept., 1881, over and  above  all  deductions  for  taxes  and  assessments  of  every  kind  levied  or  assessed,  or  to  be levied  or  assessed,  on  said  demised  premises,  or  the rent  issuing  therefrom."    The  company  also  leased  to said McIntire lot No. 118, in said town, by a written lease containing similar provisions ; and to J. J. Green lot No. 18 by a similar deed, who assigned his lease to said McIntire ;  and to Anna McKinley lot No. 8 by a similar deed, which  last-named  lease  said  McIntire  acquired  by  purchase from F. M. Reynolds, trustee, under a deed of trust to secure a debt due from said Anna McKinley to said McIntire,—which lots said McIntire  entered  upon  and  occupied by virtue of said assignments or sales.   On the 2d day of  August,  1894,  said  company  brought  an  action  of *assumpsit* in the circuit court of Mineral  county against said Elias McIntire  to  recover  from  him the taxes which had accrued upon said lots, amounting in the aggregate to two

hundred and ninety-three dollars and eighteen cents. The defendant pleaded *non assumpsit*, and the statute of limitation of five years, on which pleas issue was joined, and the case was submitted to the court upon an agreed statement of facts, which is set out in the defendant's bill of exceptions; whereupon the court found for the plaintiff three hundred and forty-five dollars and ninety-five cents, with interest from date of the judgment; whereupon defendant moved the court in arrest of judgment and for a new trial; which motion the court overruled, to which ruling the defendant excepted, and took a bill of exception, and applied for and obtained this writ of error.

The first three assignments of error suggested by the plaintiff in error are to the same effect, claiming that the buildings erected upon said lots were personal property, and should have been so assessed, and not placed upon the land books. Now, that the lots, with their improvements, were properly assessed upon the land books of Mineral county, is apparent by referring to section 40 of chapter 29 of the Code, where it is provided that "as to real property the person who, by himself or his tenant, has the freehold in his possession, whether in fee or for life, shall be deemed the owner for the purpose of taxation." There can be no question but that the plaintiff was in possession of these lots by its tenant, and therefore the lots were properly assessed to it. There is no contention in the brief of the plaintiff in error that these town lots, and the buildings on them, were persosal estate, and should have been placed on personal property books. Counsel for plaintiff does contend that there is nothing on the face of the lease from said company to McIntire (and it is agreed that the same provisions were contained in the other leases) to require said tenants to pay the taxes on said property. Now, in addition to the clause above quoted from said lease, it contains the following: "And the said Elias McIntire, for himself, heirs, executors, administrators, and assigns, covenants with the said W. Va. Central & Pittsburg R. R. Co. and its assigns to pay the aforesaid rent, taxes, and assessments when legally demandable." This lease appears to have been offered in evidence before the court, and my construction of said first clause is that

said McIntire covenanted to pay for the rent of said lot
twenty-four dollars in addition to the taxes and assess-
ments of every kind levied or assessed on said demised
premises.    It could never have been intended that the
taxes and assessments should be deducted out of the rent,
as that construction might consume the entire rent in the
payment of taxes, if good houses were erected on the lots.
The intention was that the tenants should pay the taxes as
part of the rent of said lots, and this intention is made
clear by the latter clause in the lease.

This lease was entered into by the parties thereto with
the law in regard to assessments before them, and the law
formed a part of their contract.    They knew that no part
of these taxes under our statute would be charged to Mc-
Intire, and therefore it was not their intention, by the pro-
visions of said lease, that these tenants should only pay
such taxes as were assessed against them, as is claimed in
the fifth assignment of errors.    Section 38, chapter 29, Code,
provides, in so many words, how town lots shall be assess-
ed, as follows :    "In the table of town lots he shall enter
separately each lot, whether improved or unimproved, and
shall set forth in as many separate columns as may be
necessary, the name of the person and his estate, as in the
table of tracts of land, charging lots leased for a term of
years on ground rent including all improvements thereon,
not to the lessee, but to the tenant for life or fee simple
owner under whom the lessee holds."    Thus there could
be no mistake in referring to the law as to whom said lots
would be properly assessed.

The eighth assignment of error is that the court erred
in deciding that said McIntire, as assignee or owner of the
buildings on said lot, was bound by the stipulations of said
leases as to taxes, when not signed by him.    It appears,
however, from the agreed statement of facts, that McIn-
tire accepted both of the leases executed to him, placed
them on record, and took possession of the lots thereun-
der.    He also took possession of the lot assigned to him by
Green as well as the one purchased from Reynolds, trus-
tee, accepted the assignment, and had it placed on record.
It is contended by counsel for the defendant in error, I
think correctly, that the acceptance of said deeds has the

effect to bind said McIntire to the covenants therein contained.   This contention is sustained by the law as stated in 2 Devl. Deeds, § 1074, as follows : "A grantee, by accepting a deed which provides that he shall assume a mortgage, is as much bound as he would be if he had executed a special contract for that purpose.   The principle is well settled that where one, by deed poll, grants land, and conveys any right, title, or interest in real estate to another, and where there is any money to be paid by the grantee to the grantor, or any other debt or duty to be performed by the grantee to the grantor, or for his use and benefit, and the grantee accepts the deed, and enters on the estate, the grantee becomes bound to make such payment or perform such duty, and, not having sealed the instrument, he is not bound by it as a deed, but, it being a duty, the law implies a promise to perform it, upon which promise, in case of failure, *assumpsit* will lie,"—citing numerous authorities.

The ninth assignment of error claims that the court erred in holding that the covenant to pay taxes in said leases ran with the land.   Now, as to the two leases made directly to the defendant, McIntire, this assignment would not apply.   The leases, it is agreed, were all alike, and on the face of the paper the parties contract, for themselves, executors, and assigns, to perform the covenants, etc.   In 12 Am. & Eng. Enc. Law, 1022, we find it said that "a covenant to pay taxes is a covenant which runs with the land," —citing numerous authorites.   Also, in *Id*. 1034, the law is stated thus : "An assignment of the term by the lessee creates a privity of estate between the lessor and the assignee after the acceptance of the leasehold estate by the latter."   See, also, *Gas Co.* v. *Johnson*, 123 Pa. St. 576, (16 Atl. 799), where it is held that an assignee of the lease is fixed with notice of its covenants, and takes the estate of his assignor *cum onere;* and that "each successive assignee of a lease, because of privity of estate, is liable upon covenants maturing and broken while the title is held by him," etc.   10 Am. St. Rep. 553.   See note to the case.

The tenth assignment of error claims that the court erred in holding that the statute of limitations of five years did not apply to this case.   This assignment, we think, is

not well taken, for the reason that, although the action is *assumpsit*, the obligation upon which the action was founded was in writing, and, as I think, the statute of limitations does not apply.    In support of this conclusion, I ask, where do we look for the contract of the lessee, McIntire ? Surely, to the face of the writing; and looking to the lease, we find he covenants with the lessor to pay the rent, taxes, and assessments when legally demandable.    The only evidence outside of this lease is that said lessee accepted the property and took possession under the lease, which appears in the agreed statement of facts.    Devlin on Deeds in section 1074, in addition to what is quoted above from that section, says, (speaking of the acceptance of a deed on the face of which it is covenanted that the grantee is to pay any debt or perform any duty):    "Such an undertaking is a contract in writing, binding upon the grantee, just as the acceptance by a lessee of a lease in writing, signed by only the lessor, makes it a written contract binding upon such lessee, and suit can be instituted upon it, and the same rights maintained as though it were signed by the grantee."    So, in the case *Schmucker* v. *Sibert*, 18 Kan. 105 (a case in which the opinion was prepared by Brewer, J.), it was held :    "The acceptance of a deed which in terms provides that the grantee is to assume a certain incumbrance on the granted premises makes a contract in writing by such grantees to pay that incumbrance, upon which contract the holder of the incumbrance may proceed directly against the grantee, and recover."    Also that "such a contract is not a mere waiver of the statute of limitations by promise or acknowledgment, and therefore necessarily to be signed by the party to be charged thereby, but it is an original contract, by which the grantee creates a liability that had no existence before."    This doctrine is sustained by the case of *Dock Co.* v. *Leavitt*, 54 N. Y. 35, where it is held :    "The acceptance of a deed, and the enjoyment of the estate granted, estops the grantee, and all persons claiming under him, from denying his covenants, and from denying that the seal attached is his as well as that of the grantor."    The court in its opinion quotes from *Trotter* v. *Hughes*, 12 N. Y. 74.    Judge Denio says :    "The acceptance of a conveyance containing a

statement that the grantee is to pay off an incumbrance binds him as effectually as though the deed had been *inter partes*, and had been executed by both grantor and grantee." Also from *Spaulding* v. *Hallenbeck*, 35 N. Y. 206, where it is said: "The grantee, having accepted the deed, and taken possession under it, is bound by the covenants therein contained as effectually as if he had signed them." Shep. Touch. 177, is also quoted as saying: "If feoffment or lease be made to two, and there are divers covenants in the deed to be performed on the part of the feoffees or lessees, and one of them doth not seal, and he that doth not seal doth notwithstanding accept of the estate and occupy the lands conveyed or demised in these cases as touching all inherent covenants, they are bound by these covenants as much as if they do seal the deed." So, also, Platt, Cov. p. 18, says: "The acceptance of a deed is considered equivalent to an actual execution by the lessee." The statutes of limitation are regarded as statues of repose, and receive their sanction from the fact that their tendency is to place contracts upon a firmer footing than the uncertainty of human memory, and, where they are to run for any considerable period, to require them to be in writing, if the parties expect to enforce them with certainty; yet where parties accept a lease, and enjoy its benefits, and the great weight of authority indicates that, as to the covenants contained in the lease, the lessees' contract is evidenced by the writing, it would seem that the statute of limitations which applies to contracts in writing should control, and the bar of such contracts should be ten years, and this is my conclusion upon the question. The other members of the court do not concur with me upon this point, but hold that the strict letter of the statute should be applied, and that the covenants in such a lease are barred in five years, unless the lease is signed by the lessee. The amount of taxes excluded by this ruling would be ninty-one dollars and sixty-six cents, which would not be sufficient to bring the error within the jurisdiction of this Court. The judgment complained of is therefore affirmed.

BRANNON, JUDGE, (*concurring*):

Lest I be misunderstood in the important law points in

this case, I will say that I do not question that if a person accept an estate or benefit under a deed or other instrument signed by others, but not by him, he becomes personally bound to assume the burdens and perform the acts which the deed or instrument imposes upon him. No doubt but that the acceptance of this lease bound the lessee to pay the taxes. Therefore we sustain the action. But, when we come to the question of limitation,—a matter not provided for in the lease,—we come upon the clauses of section 6, chapter 104, Code 1891, providing that where the action is "upon any other contract in writing under seal executed before the 1st day of April, 1869, within twenty years, but if executed on or after that day, within ten years, if it be upon an .award or upon a contract by writing, signed by the party to be charged thereby, or by his agent, but not under seal, within ten years." I hold that, to bring one under this ten years' limitation, he must sign the instrument; otherwise five years is the limitation. If we do not so hold, we nullify this statute. I know that this lease is a sealed instrument, and that the statute as to sealed instruments does not use the word "signed;" but it does use the word "executed," and I cannot think that the presence of a mere scroll, not a personal seal, can fill the manifest purpose of the statute. I do not think we can dispense with a signature in the case of a writing not sealed, and I see no reason to say that a signature would be required as to that instrument, and not to a sealed instrument. It is the statute that leads JUDGES DENT, McWHORTER, and myself to the conclusion that five years bars the action for rent by a lessee not signing the lease.

*Affirmed.*