S. P. CAMPBELL *et al. v.* KANAWHA & HOCKING COAL AND COKE COMPANY

(CC 618)

Submitted January 30, 1940.  Decided March 26, 1940.

*Mahan, Bacon & White,* for plaintiffs.
*Conley, Thompson & Neff,* for defendant.

KENNA, JUDGE:

This is an action in assumpsit brought in the Circuit Court of Fayette County by S. P. Campbell, Ada M. Craver and Pattie J. Kyle against Kanawha & Hocking Coal and Coke Company for the purpose of recovering damages resulting from the violation of a covenant contained in a lease from the plaintiffs to the defendant. Plaintiffs filed an amended declaration comprised of two counts: a first and special count and a second count containing all of the common count allegations. The defendant filed a demurrer to the first count of the declaration and also a demurrer to the entire declaration. In addition, the defendant filed two special pleas to the first or special count of the declara-

tion, to both of which pleas the plaintiffs filed their demurrer. The trial judge overruled both the demurrers to the special and combined counts and sustained the demurrers to both of the defendant's special pleas. Thereupon, upon the joint motion of plaintiffs and defendant he certified to this Court four specific legal queries that arose upon the demurrers to the amended declaration, and nine specific legal queries that arose upon the demurrer to the two special pleas filed by the defendant.

According to the allegations contained in the special count of the amended declaration, the plaintiffs are the owners of seven and seventy-six one-hundreths acres in Longacre, Fayette County, which they, on the first day of June, 1920, as such owners, leased, together with the improvements thereon, to the defendant by a written lease, the term being for twenty years, and a renewal provision permitting it to be extended by the lessee for ten additional years. The special count of the amended declaration alleges that the lease contained a covenant by which the defendant agreed that it "would keep all the buildings and structures situate on said leased premises in as good repair as they were at the time of said lease until the expiration thereof, and that during the life of said lease the said defendant would keep the same properly insured against loss or damage by fire and would replace any of the structures on said premises as of the date of said lease which should be destroyed or injured by fire during the life thereof." The special count goes on to allege that the defendant took possession, which it retained until the first day of October, 1938, at which time the lease and possession were transferred by it to Semet-Solvay Company.

The special count goes on to allege that on June 1st, 1920, when the lease took effect, there were situated upon the premises leased a twelve-room dwelling of the value of $4,000.00 and a four-room building valued at $1,000.00; that both of these buildings were entirely destroyed by fire, the smaller building on September 5, 1921, and the larger one on the 22nd day of February, 1929, at which respective times they were of the alleged value, and that though

the plaintiffs have repeatedly requested the defendant to replace the two buildings, the defendant has, in violation of its covenant, continuously refused and neglected to do so.

The first count further alleges that the defendant, in compliance with the covenant of the lease, at the time of the destruction by fire of each of the buildings, was carrying fire insurance upon each, without naming the amount, which it has collected and retained for its own use and benefit.

The second part of the declaration which contains the common counts is evidently not predicated upon an implied promise, because its general allegations of the defendant's promise to replace definitely charges that it did so by a promise in writing.

There is but one legal question certified which arises under the demurrer to the special count of the amended declaration, and that is whether a cause of action for violating the covenant to replace destroyed buildings could accrue to the plaintiffs until the expiration date of the twenty-year term of the lease, notwithstanding the assignment to the Solvay Company.

The written lease does not appear in this record, but from the allegations of the declaration, we are concerned with three distinct duties that the lessee undertook to perform in a single covenant, that is to say, (1) "keep" the buildings upon the premises in good repair; (2) "keep" the property insured against loss by fire; and (3) replace any of the structures on the leased premises as of the date of the lease that should be destroyed or injured by fire during the life thereof. It is agreed that the intention of the parties should control the construction of this covenant, the nature of which can be arrived at only by construing the allegations contained in the declaration. For a general annotation, see 106 A. L. R. 1359, 1364, and 45 A. L. R. 12, 39.

According to the allegations of the declaration, this was a twenty-year lease entered into in 1920, which contained a covenant to keep the buildings upon the premises insured

against loss by fire. It seems apparent that such a covenant was intended to operate for the lessor's benefit, and that that was the purpose of both parties to the written contract. See *Digby* v. *Atkinson*, 4 Camp. 275, 171 English Reports 88, decided in 1815. Of course, with the lessee bound to replace the structures that were destroyed by fire, fire insurance was to supply the funds to meet that obligation or replace funds that had been used for that purpose. If the covenant to replace destroyed buildings is to be construed in a way so that the replacement of the buildings can be deferred until the end of the term, we have the contracting parties entering into an agreement in 1920 requiring fire insurance to be carried upon the buildings, which, theoretically, requires the replacement of a building destroyed within twenty-four hours after the lease became effective, but deferring that replacement for twenty years in spite of the fact that the tenant, in compliance with another term of the covenant, had insured it by carrying fire insurance payable to it upon which it had collected the full amount in 1920, and the owner of the property could expect no indemnification until 1940. In short, the destruction of an unnecessary or non-essential building immediately after the execution of the lease would enrich the tenant to the extent of its value, lawful interest upon which would more than discharge the tenant's obligation at the end of twenty years. Furthermore, in order to attach any legal significance to that part of the covenant to replace which, according to the allegations of the declaration, contains the language "during the life thereof", the language quoted should not be limited to the destruction or injury of the structures to which it applies, the operation of the covenant itself, without that language, necessarily placing that limitation upon the tenant's liability. In other words, the tenant's liability under the lease is necessarily confined to structures destroyed during the life of the lease without language limiting the liability to that period. Construing the declaration so that that language, "during the life thereof", extends to and applies as well to replacement, not only attaches a legal meaning to

the phrase under consideration which it would otherwise not have, but also causes that covenant to conform to what apparently is the only practical construction to be placed upon the obligation of the tenant to carry fire insurance upon the landlord's buildings. Unfortunately, we are unable, with the record before us, to place a construction upon the terms of the lease itself and are only construing the allegations of the amended declaration.

The defendant contends that the plaintiffs can hold it upon a contractual basis as a party to the lease, to perform such covenants as run with the land and are yet to be performed, in spite of the fact that the assignee is also bound by privity of estate, citing *Kanawha-Gauley C. & C. Co. v. Sharp et al.,* 73 W. Va. 427, 80 S. E. 781, 52 L. R. A. ( N. S.) 968, Ann. Cas. 1916E, 786; *Comley* v. *Ford,* 65 W. Va. 429, 64 S. E. 447; and *W. Va. C. & P. R. Co.* v. *McIntire,* 44 W. Va. 210, 28 S. E. 696. Neither the cases cited, nor, as we understand it, the defendant's contention, apply to a breach of covenant. As we view the allegations of the declaration, the covenant to replace was breached before the assignment to the Solvay Company (see Taylor's Landlord and Tenant 450, sec. 361; *Webster* v. *Nosser,* 2 Daly 186; *Buck* v. *Pike,* 1 Vt. 529; *Schieffelin* v. *Carpenter,* 15 Wend. 400), but accepting the defendant's contention that the covenant to replace could be fully complied with at the end of the term for the purpose of discussion only, the fact remains that by assigning the leasehold estate and surrendering possession of the premises to another, the defendant, beyond question, by relinquishing its right to enter the premises, destroyed its power to comply with the lease's covenants in that respect. Although the covenant has been spoken of as one that may be said to run with the land, that does not relieve the lessee of its admitted contractual obligation of which impossibility of performance brought about by its own voluntary act, constituted what the aggrieved party might treat as a rescission or breach. *Harless* v. *Western & Southern Life Ins. Co.,* 119 W. Va. 102, 192 S. E. 137.

The common law rule bound a tenant who had cov-

enanted to leave the premises in repair, to rebuild buildings which were destroyed by fire during his tenancy with or without fault on his part. See the discussion in *Arbenz v. Exley,* 52 W. Va. 476, 44 S. E. 149; 61 L. R. A. 957; 13 L. R. A. (N. S.) 408n; 34 L. R. A. (N. S.) 987n; 42 L. R. A. (N. S.) 649n; 28 A. L. R. 1483n, 1541n; 45 A. L. R. 40n, 61n; 49 A. L. R. 1127n. To relieve against the harsh operation of that rule, the Code of 1849 included what is now Code, 36-4-13, which provides that no covenant to repair shall require the replacement of buildings destroyed by fire or otherwise without fault of the tenant, or that they be paid for by the tenant *"unless there be other words showing it to be the intention of the parties that he should be so bound."* (Italics supplied.) However, it was not until the adoption of Code, 37-6-28, that the destruction of buildings, wholly or partially, without fault of the tenant brought about an abatement in rent. Going back to the covenant to repair and the Code provision affecting that covenant, we are concerned with the proviso contained in that section to the effect that a covenant to repair shall not be interpreted as covering the destruction of buildings *unless* there be other words *showing* it to be the *intention* of the parties that the tenant should be so bound. We have first the common law construction of such a covenant, and then the statutory provision altering that rule of construction and requiring that if the covenant to repair is to include the replacement of destroyed buildings, additional language must indicate that purpose. It follows that the additional language is language which does nothing more than to expand the meaning of the covenant to repair, and operates as a part and parcel of that covenant. In other words, if the tenant's covenant to repair contained language which placed him under an obligation to replace destroyed buildings and if a covenant to keep in repair required continuous compliance, it follows that if a stipulation to replace is to be construed as an enlargement of a covenant to keep in repair, the two provisions should not be distinguished so that the one to repair is continuously operative and the other requires compliance only at the

end of the term, but the covenant to repair being the paramount covenant and that to replace being only the required statutory expansion of that covenant's provision, the required time of complying with the covenant to replace should be fixed by that of the paramount covenant, so that replacement when the necessity arises should be construed as a continuous duty. This theory is rendered forcible by the fact that the provision to repair and that to replace are contained in the same sentence of the lease before us, and the fact that a single sentence usually can contain but one covenant. *Horsefall* v. *Testar,* 7 Taunt 385, 129 English Reports 154.

We think that what has been said disposes of the demurrer to the special count in the declaration. The demurrer to the entire declaration, we think, reaches legal questions that are prematurely raised on demurrer. As to there being an improper joinder of causes of action in the special and common counts, we think that under the expansive language of the common counts, they, without question, include a contract such as that described in the first or special count of the declaration. Naturally, the entire declaration, including the common counts, will not conform precisely with the proof adduced at the trial, and it would be rather difficult to frame a theory of proof that would conform to each of the common counts free from inconsistency, but since each of the counts is predicated upon the recovery of damages for a breach of contract, we see no fundamentally contradictory or misleading allegations in the declaration. The first count is drawn so as to present an alleged breach of a written contract, but as to the common counts being based upon an alleged "presumed contract" claimed to be fully performed except the payment of money, as is asserted in the defendant's brief, we fail to grasp the consequential error. Assumpsit is well known to be a remedy in which many useful fictions are resorted to, devised originally to fill a broadening chasm between law and chancery. There is no such thing known to pleading as an implied promise, so that we do not understand the use of the term "alleged presumed contract." It

may well be that upon submission, the plaintiffs will be required to submit upon the special count, it being, apparently, a written contract for the executory breach of which recovery is sought, and for which recovery cannot be procured under the common counts. *Mankin* v. *Jones,* 68 W. Va. 422, 69 S. E. 981; *Thomas* v. *Mott,* 78 W. Va. 113, 88 S. E. 651; *Minotti* v. *Young,* 99 W. Va. 97, 127 S. E. 913. If, after the taking of proof, the possibility of the common counts confusing or misleading the defendant should arise, they may, by the trial court, be expunged, but we do not believe that there is a material inconsistency between the common counts and the special count that would justify holding the declaration in its entirety bad on demurrer.

Of the two special pleas to which the trial judge sustained demurrers, the first is predicated upon an implied alteration of the covenant to repair and replace contained in the written lease, and the second upon an alleged estoppel. Summing up the allegations and dealing with them briefly, the facts alleged in both are that the defendant, with the knowledge and consent of the plaintiffs, has, during the term of the lease, constructed upon the premises buildings alleged to be of the value of fifty-five thousand dollars, and that it has constructed upon the site where the twelve-room building destroyed by fire was standing a first-aid and recreation building costing $1,658.72, and erected a building upon the site formerly occupied by the four-room frame dwelling house, also destroyed by fire, ten garage buildings at a cost of $1,000.00. There can be no question but that the circumstances alleged in these special pleas might constitute an agreed settlement and discharge by the defendant of any liability which accrued against it by breach of covenant if properly pleaded. But since the circumstances alleged in both the special pleas are based upon implied alteration of a written instrument or upon an estoppel tantamount to altering its terms, many of the occurrences being long after the first alleged breach of covenant, we are of the opinion that the trial court was right in sustaining the demurrer to each of the special pleas.

We are of the opinion that it is non-essential to consider the remaining questions certified in the light of our conclusions upon those already dealt with.

The order of the Circuit Court of Fayette County is affirmed.

*Affirmed.*

RILEY, PRESIDENT, dissenting:

It is with regret that I dissent from the majority opinion of the Court in so far as that opinion attempts to justify the action of the trial court in overruling the demurrer to the first count of the amended declaration.

I cannot agree with the construction of the covenant of the lease as to the replacement of structures on the leased premises which have been destroyed or injured by fire. As suggested in the majority opinion, the lease itself is not a part of the record. However, the allegations of the amended declaration as to the covenants dealing with repair and replacement read:

> "Said defendant covenanted and agreed that it * * * would keep all of the buildings and structures situate upon said leased premises in as good repair as they were at the time of said lease until the expiration thereof and that during the life of said lease the said defendant would keep the same properly insured against loss or damage by fire and would replace any of the structures on said premises as of the date of said lease that should be destroyed or injured by fire during the life thereof."

Evidently the count is based upon the theory that, under the covenant of the lease as to the replacement, defendant was bound to replace the two buildings destroyed by fire and the assignment of the lease to the Semet-Solvay Company created an anticipatory breach of the covenant so that plaintiffs were to await the expiration of the lease before instituting their action. It is to be noted that the lease does not express any particular date for the replacement of any building destroyed by fire. It simply provides

the duty of replacement of any structures on the leased premises as of the date of the lease which should be destroyed or injured by fire *during the life thereof*. With all deference to my brethren who have joined in the majority opinion, I feel constrained to say that this language means exactly what it says. And therefore, in the absence of the application of the doctrine of anticipatory breach, no action based upon a claimed failure of the defendant to replace the buildings destroyed by fire could possibly accrue before the expiration of the lease. In *Colhoun* v. *Wilson*, 27 Gratt. Va. 639, the court held that under a covenant of a lease requiring the lessee to repair, which specified no time, the said lessee had to the end of the lease to make repair. Notwithstanding this decision of the Virginia court, it seems to me that the better rule is that under a covenant to repair, which states no definite time, the tenant must make needed repairs within a reasonable time. See *Webster* v. *Nosser*, 2 Daly's Reports 186. If it is true, as stated in the opinion in the *Colhoun* case, the tenant has until the end of the lease to make repairs, *a fortiori* the duty to replace should await the expiration of the lease. Obviously, the best interests of the landlord would require that repairs be made at such times during the life of the lease as the condition of the property may require. On the other hand, it is to the best interests of the landlord that, where a tenant has the duty to replace, the replacements be made near the expiration of the lease. It seems quite apparent to me that where property is allowed to go into disrepair, in many places it will depreciate rapidly in value, but where a replacement is made shortly before the end of the lease, that replacement would be of more value to the landlord than if it had been made at some earlier time during the lease. In *Chipman* v. *Emeric*, 5 Cal. 49, 63 Am. Dec. 80, the court held that a covenant to rebuild a wharf, which specified no particular time, may be complied with at any time before the expiration of the lease.

However, plaintiffs' counsel say that if the construction, which I am suggesting here, should be placed upon the covenant, the landlord, nevertheless, has the right to main-

tain this action because by the assignment to Semet-Solvay Company, the defendant has created an anticipated breach. This position, however, does not conform with the law in this state governing the duties and liabilities of a lessee who assigns his interest in a lease, where the lessor has assented thereto, or, as in the instant case, the lease contains no inhibition against assignment.

Upon careful consideration, I do not think that the assignment of the instant lease operated to accelerate the time for the performance of the covenant to replace, nor did it in any way diminish the duties and obligations of the lessee under the covenant. In this state an assignee of a lease must take notice of all of its covenants and is liable for the breach of any covenant where the title is held by him. *West Virginia Central & P. R. Co.* v. *McIntire,* 44 W. Va. 210, 28 S. E. 696, Pt. 3, Syl. See also, *Kanawha-Gauley Coal & Coke Co.* v. *Sharp,* 73 W. Va. 427, 430, 80 S. E. 781, 52 L. R. A. (N. S.) 968, Ann. Cas. 1916E, 786. Under these cases, I do not think the assignment constituted a breach of covenant. It follows that, as disclosed by the allegations of the first count, this action has been prematurely brought, and the demurrer to said count should have been sustained.

Judge Fox joins in this dissent.