**THIRD DIVISION**
**MERCIER, J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 30, 2020**

# In the Court of Appeals of Georgia

A18A0751. SCOTT v. THE STATE.

GOBEIL, Judge.

On remand from the Supreme Court of Georgia, we are asked to determine and apply the unit-of-prosecution analysis to assess whether multiple counts of child molestation, occurring within a relatively short time frame and in a single uninterrupted course of conduct, can support multiple convictions and sentences under OCGA § 16-6-4 (a) (1). As explained more fully in this opinion, we conclude that they cannot given the specific facts of this case and the lack of statutory authority specifying otherwise.

> The evidence at trial showed that on the night of February 6, 2011, the victim, who was then 11 years old, awoke to see [Akeem] Scott standing next to her bed; as she put her head back down to go back to sleep, she felt Scott reach under her clothes to fondle her breasts, buttocks and anal

area, and vagina, inserting his finger into both her anus and vagina. When the victim then got out of bed to use the bathroom, Scott picked the lock on the bathroom door and opened it to watch the victim urinate, despite her telling him three times to get out. Three of the child molestation counts were based on the bedroom incident: Count 2 of the indictment was based on Scott's touching the victim's breasts, Count 3 on his touching her buttocks, and Count 4 on his touching her vagina. The final count (Count 5) was based on the bathroom incident.

*Scott v. State*, 306 Ga. 507, 508 (1) (822 SE2d 426) (2019). A Fulton County jury found Scott guilty of four counts of child molestation (Counts 2-5).[1] The trial court sentenced him to a total term of 80 years with the first 40 years to serve in confinement and the remainder on probation. Following the denial of his motion for new trial, Scott appealed, arguing, as relevant here, that the trial court erred in failing to merge his convictions for child molestation on Counts 2, 3, and 4 of the indictment. Relying on several of this Court's previous opinions, as well as authority from our Supreme Court, we concluded that the trial court did not err by failing to merge these three convictions for child molestation.[2] See *Scott v. State*, Case No. A18A0751, slip

---

[1] The jury acquitted Scott of one count of aggravated sexual battery (Count 1).

[2] Scott does not contend that his fourth child molestation conviction, Count 5, should have merged with the other three child molestation convictions.

2

op. at 16-18 (5) (June 29, 2018). However, because the trial court failed to sentence Scott in compliance with the split sentence requirements of OCGA § 17-10-6.2,[3] we vacated Scott's sentence and remanded the case to the trial court for Scott to be re-sentenced in accordance with OCGA § 17-10-6.2 (b). *Scott*, Case No. A18A0751, slip op. at 18 (6).

The Supreme Court of Georgia granted Scott's petition for certiorari and subsequently held that we "applied the wrong legal analysis in deciding that [three of the] four counts of child molestation of which [] Scott was found guilty do not merge."[4] *Scott*, 306 Ga. at 507. In our previous opinion, we evaluated Scott's merger claim using the "required evidence" test that the Supreme Court set forth in *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006), to determine if one crime is included in another and therefore merges with the other crime. See *Scott*, Case No. A18A0751, slip op. at 17 (5). Using that test, we examined "whether each offense

---

[3] OCGA § 17-10-6.2 (b) provides that "any person convicted of a sexual offense shall be sentenced to a split sentence which shall include" both "the minimum term of imprisonment specified in the code section applicable to such sexual offense" and "an additional probated sentence of at least one year[.]"

[4] The Supreme Court further listed and disapproved of several of this Court's previous opinions in which it appeared that we failed to engage in the applicable unit-of-prosecution analysis with respect to determining whether multiple counts of child molestation should merge. *Scott*, 306 Ga. at 510 (2).

requires proof of a fact which the other does not." *Lucky v. State*, 286 Ga. 478, 481 (2) (689 SE2d 825) (2010) (citation omitted). Pursuant to this reasoning, we concluded in our previous opinion that the trial court did not err in refusing to merge three of Scott's child molestation convictions because each of the charged acts of child molestation required "proof of a fact which the other did not[.]" *Scott*, Case No. A18A0751, slip op. at 17 (5) (citing *Drinkard*, 281 Ga. at 215; punctuation omitted). Specifically, we explained that "to secure a conviction on all three counts, the State had to prove that Scott touched three different and distinct parts of [the victim's] body." *Scott*, Case No. A18A0751, slip op. at 17 (5).

Our Supreme Court, however, vacated this holding, explaining that *Drinkard's* "required evidence" test only applies in analyzing "counts charging two *different* crimes." *Scott*, 306 Ga. at 509 (2) (emphasis in original). See *Smith v. State*, 290 Ga. 768, 772 n. 4 (723 SE2d 915) (2012) ("[T]he 'required evidence' test [only applies] 'where the same act or transaction constitutes a violation of *two distinct statutory provisions*[.]'") (quoting *Drinkard*, 281 Ga. at 215) (emphasis in original). Here, Scott was charged with and found guilty of four counts of the same crime, namely, child molestation in violation of OCGA § 16-6-4 (a) (1). In this context, the Supreme Court held that the merger analysis requires that we carefully examine the criminal

4

statute at issue "to identify the 'unit of prosecution' — 'the precise act or conduct' that the legislature criminalized." *Scott*, 306 Ga. at 509-510 (2) (citation and punctuation omitted).

As a result, the Supreme Court vacated Division 5[5] of our opinion and remanded the case for us "to determine and apply the unit of prosecution for the crime of child molestation in deciding how many convictions and sentences for that crime may be imposed on Scott." *Scott*, 306 Ga. at 507-508. Accordingly, for the reasons more fully explained below, we now vacate Division 5 of our June 29, 2018 opinion and substitute the following. The rest of our opinion remains unchanged.[6]

5. Scott contends that the trial court erred in failing to merge his child molestation convictions on Counts 2, 3, and 4, arguing that all of those counts arose

---

[5] The Supreme Court opinion references Division 2 of our opinion with respect to the merger analysis. *Scott*, 306 Ga. at 507. However, this appears to be a scrivener's error, because Division 2 of our opinion addresses the sufficiency of the evidence to support Scott's conviction on Count 5 of the indictment, which charged Scott with child molestation based on his entering the bathroom to observe the victim urinate. See *Scott*, Case No. A18A0751, slip op. at 8-11 (2). The merger issue is addressed in Division 5 of our original opinion. See id. at 16-18 (5).

[6] The Supreme Court clarified that "the other issues Scott raises in his petition do not warrant further review, so our grant of certiorari and our remand to the Court of Appeals are limited to the merger issue." *Scott*, 306 Ga. at 508 n. 1.

out of the same conduct, and therefore, the trial court should have imposed only one conviction and sentence.

"'Merger' refers generally to situations in which a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law,[7] can be punished — convicted and sentenced — for only one of those crimes." *Scott*, 306 Ga. at 509 (2). When a defendant is charged, as Scott is here, with multiple counts of the same crime originating from a single course of conduct, "the doctrine of substantive double jeopardy is implicated, and the 'unit of prosecution,' or the precise act criminalized by the statute, must be identified." *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018). "The Double Jeopardy Clause imposes few limits upon the legislature's power to define offenses. Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this legislative choice." Id. (citation and punctuation omitted); *Sanabria v. United States*, 437 U. S. 54, 69 (II) (B) (98 SCt 2170, 57 LE2d 43) (1978) (noting that "[f]ew, if any, limitations are

---

[7] "The doctrine of double jeopardy has two components: the 'procedural' bar on double jeopardy, which places limitations on 'multiple prosecutions for crimes arising from the same conduct,' and the 'substantive' bar, which protects against 'multiple convictions or punishments' for such crimes." *Williams v. State*, __ Ga. __, __ (1) (838 SE2d 235) (2020) (citation and punctuation omitted).

imposed by the Double Jeopardy Clause on the legislative power to define offenses"). See also OCGA § 16-1-4 ("No conduct constitutes a crime unless it is described as a crime in this title or in another statute of this state."). As our Supreme Court has explained, "the text of the statute itself best reflects that legislative choice." *Coates*, 304 Ga. at 330. It is the General Assembly's exclusive role to "determine to what extent certain criminal conduct has demonstrated more serious criminal interest and damaged society and to what extent it should be punished." *State v. Marlowe*, 277 Ga. 383, 383-384 (1) (589 SE2d 69) (2003) (citation and punctuation omitted).

At trial, the victim, E. W. testified that in 2011, she was spending a Saturday night at the home of her cousin. Also present in the home was Scott, who was the cousin's boyfriend. The cousin left for work early Sunday morning and sometime thereafter, E. W. woke up because she "felt something . . . crawling" on her. E. W. looked up, and after seeing Scott standing next to her bed, she put her head back down to go back to sleep. Scott then reached under her clothes and fondled her breasts, her buttocks and anal area, and her vagina. E. W. described the incident at trial as follows:

Victim:     He took his hand and went to my butt first and like kind of

7

pushed his hand all the way in and went around.

State:      Okay.

Victim:     And when he hit my chest. It was under my shirt[.]

·  ·  ·

State:      You said when he touched your – you said he went all the

way around?

Victim:     (Nods head.)

State:      All the way around where?

Victim:     Like all the way in my pants.

State:      Okay. And when he touched your butt, did it touch – go in

the inside or the outside of your butt?

Victim:     The inside.

State:      And you said – Did he touch your private area?

Victim:     Yes.

State:      Was it the inside or the outside of your private area?

8

Victim:     Inside.

State:     Okay. And your chest, where on your chest did he touch

    you?

Victim:     Like right here (indicating).

Based on the foregoing, as relevant here, the indictment charged Scott with committing child molestation: "by touching [the victim's] breasts with the accused's hand[;]" (Count 2) "by touching [the victim's] buttocks with the accused's hand[;]" (Count 3) and "by touching [the victim's] female sex organ with the accused's hand[.]" (Count 4).

Scott argues that the foregoing three child molestation counts arose out of the same conduct, were based on his uninterrupted touching of three parts of the victim's body during a single incident, and therefore should merge. He asserts the crime of child molestation should be treated the same way as the crime of assault, namely, "injuries that occur without an ensuing interval or renewed assault should merge." Or, put another way, "multiple touches close in time" should be considered a single unit of prosecution. See, e.g., *Thompson v. State*, 291 Ga. App. 355, 360-361 (5) (662

9

SE2d 135) (2008) (holding that two counts of battery, one for hitting the victim in the mouth and one for hitting her in the eye, merged into one where there was no evidence of "two completed exchanges separated by a meaningful interval of time or with distinct intentions"); *Davis v. State*, 186 Ga. App. 491, 492 (2) (367 SE2d 884) (1988) (evidence did not authorize conclusion that assault with pistol was "completed" between time appellant fired shots while on the run and time when he caught up with victim and attempted to fire additional shots, and therefore those counts merged). Compare *Hug v. State*, 205 Ga. App. 746, 747 (1) (423 SE2d 700) (1992) (act of assaulting victim with hammer was completed before shooting occurred and therefore the two aggravated assault counts did not merge).

Neither our Court nor the Supreme Court of Georgia has yet to apply the unit-of-prosecution analysis to determine whether multiple counts of child molestation, occurring within a relatively short time frame in a single course of conduct, can result in multiple convictions and sentences under OCGA § 16-6-4 (a) (1). However, we find guidance in *Coates*,[8] where our Supreme Court recently applied the unit-of-

---

[8] The Supreme Court issued the *Coates* decision in August 2018, after we issued our previous decision in this case on June 29, 2018.

prosecution analysis to determine that OCGA § 16-11-131 (b)[9] — the statute prohibiting possession of firearms by convicted felons — permits only one prosecution and conviction for the simultaneous possession of multiple firearms. 304 Ga. at 329. The Supreme Court explained "the gravamen of the offense is the general receipt, possession, or transportation of firearms by convicted felons, rather than the specific quantity of firearms received, possessed, or transported."[10] Id. at 331. As such, the Court concluded that the text of OCGA § 16-11-131 (b) "is unambiguous and permits only one prosecution and conviction for the simultaneous possession of multiple firearms." Id. at 331-332 (footnote omitted).

To determine and apply the unit of prosecution with respect to the child molestation statute, OCGA § 16-6-4, we necessarily "begin our analysis with familiar and binding canons of construction. Indeed, in considering the meaning of a statute,

---

[9] OCGA § 16-11-131 (b) provides: "Any person . . . who has been convicted of a felony by a court of this state . . . and who receives, possesses, or transports any firearm commits a felony and, upon conviction thereof, shall be imprisoned for not less than one nor more than ten years[.]"

[10] The Supreme Court also noted: "If the possession of a firearm by a felon is, of itself, the dangerous act, the number of weapons with which a felon is armed becomes irrelevant. Whether the felon bears one or one hundred firearms, the felon is 'dangerously armed.'" *Coates*, 304 Ga. at 332 (quoting *Acey v. Commonwealth*, 29 Va. App. 240, 250 (511 SE2d 429) (1991)).

11

our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant." *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013) (citation and punctuation omitted). Statutory interpretation is a question of law, which we review de novo, giving no deference to the trial court's ruling. *State v. Hammonds*, 325 Ga. App. 815, 815 (755 SE2d 214) (2014).

> In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. Criminal statutes are construed strictly against the State, they must be read according to the natural and obvious import of their language, and their operation should not be limited or extended by application of subtle and forced interpretations. Also, if a criminal statute is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted.

*State v. Rich*, 348 Ga. App. 467, 471 (823 SE2d 563) (2019) (citations and punctuation omitted).

As relevant here, OCGA § 16-6-4 (a) (1) provides that a person commits the offense of child molestation when he or she "[d]oes *any immoral or indecent act* to or in the presence of or with any child under the age of 16 years with the intent to

12

arouse or satisfy the sexual desires of either the child or the person[.]"[11] OCGA § 16-6-4 (a) (1) (emphasis supplied).

Our analysis hinges on the construction of the term "any immoral or indecent act"[12] in OCGA § 16-6-4 (a) (1) and what that term signifies as to the unit of prosecution. "The word 'any' has troubled many courts." *United States v. Reedy*, 304 F3d 358, 365 n. 7 (5th Cir. 2002). It denotes a full spectrum of quantities, including: (1) one; (2) one, some, or all regardless of quantity; (3) one or more; (4) great, unmeasured, or unlimited in amount; and (5) all.[13] Based on a plain reading of the

---

[11] With an exception not applicable here, "a person convicted of a first offense of child molestation shall be punished by imprisonment for not less than five nor more than 20 years and shall be subject to the sentencing and punishment provisions of Code Sections 17-10-6.2 and 17-10-7." OCGA § 16-6-4 (b) (1).

[12] This Court has broadly construed the types of conduct that constitute an "immoral or indecent act," including instances in which no physical contact occurred between the defendant and victim. See, e. g., *Craft v. State*, 252 Ga. App. 834, 844 (3) (558 SE2d 18) (2001) (evidence that defendant showed minor a movie of adults engaging in sexual activity was sufficient to support conviction for child molestation, where minor testified to watching movie with defendant, and trier of fact could infer that showing the movie to the minor was for the purpose of arousing sexual desires of defendant or minor).

[13] Merriam-Webster Dictionary (https://www.merriam-webster.com/dictionary /any) (last visited March 30, 2020); Oxford Advanced American Dictionary (https://www.oxfordlearnersdictionaries.com/us/definition/american_english/any) (last visited March 30, 2020).

13

statute, the placement of the word "any" in OCGA § 16-6-4 (a) (1) provides no guidance as to its intended use in this context. On the one hand, the use of the word "any" suggests a lack of restriction or limitation with respect to the statute's intended scope. Indeed, each act of sexual contact to a part of the victim's body could demonstrate an intent to commit an independent and distinct abuse of the child victim that warrants a separate conviction and sentence, and signifies precisely the type of harm OCGA § 16-6-4 (a) (1) seeks to prevent. On the other hand, an uninterrupted course of conduct involving multiple unauthorized acts of molestation could constitute a single offense. See *Coates*, 304 Ga. at 331 ("the phrase 'any firearm,' as used in [OCGA § 16-11-131], indicates that the quantity of firearms, whether one or many, is inconsequential"). The statute is therefore equally sensible using the acceptable dictionary definitions of (1) one, (2) one, some or all, or (3) one or more. As such, a plain reading of the statute fails to yield an answer to the question of how many is "any" and, thus, does not set a unit of prosecution for OCGA § 16-6-4 (a) (1).

By contrast, the General Assembly has employed clear, unambiguous language with respect to the applicable unit of prosecution in numerous other contexts throughout the Georgia Code. See, e.g., OCGA § 16-11-106 (e) ("Any crime committed in violation of subsections (b) and (c) of this Code section shall be

considered a separate offense."); OCGA § 12-9-55 (d) ("Each day of continued unlawful registration shall be a separate offense."); OCGA § 34-8-256 (b) ("Each such act [of making a false statement or representation] shall constitute a separate offense."); OCGA § 43-50-45 (c) ("[E]ach act of an unlawful practice shall constitute a distinct and separate offense.").

In *Cordle v. State*, we applied the unit of prosecution analysis to determine whether two counts of burglary involving separate entries into two distinct businesses housed within the same overall structure should merge. 345 Ga. App. 584, 584-586 (814 SE2d 569) (2018). Pursuant to the burglary statute in effect at the time of the defendant's crimes, "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any building . . . or any room or any part thereof." OCGA § 16-7-1 (a) (2011). According to the defendant in *Cordle*, the statute did not clearly establish "whether the legislature intended for a person to be convicted of burglary twice for entering one building that contained two businesses," and thus he argued in favor of merger. *Cordle*, 345 Ga. App. at 585 (punctuation omitted). We disagreed, explaining as follows:

Pursuant to its plain language, the statute prohibits an individual harboring the requisite intent from entering or remaining within any building or portion of a building without proper authority. Our courts have interpreted the word "building" broadly, refusing to limit the term to "buildings of any particular type or in any particular condition." And by extending the statute to "any room or any part" of a building, the legislature demonstrated that external physical structures do not necessarily govern the burglary analysis.

Id. (citations and punctuation omitted). As such, we concluded that two separate burglaries occurred when the defendant entered two distinct businesses located in the same building, as the businesses were separated by a wall and each had its own outside entrance.[14] Id. at 585-586. By contrast, in the instant case, the child molestation statute, OCGA § 16-6-4 (a) (1), does not contain any qualifying language with respect to acts of molestation involving different enumerated parts of a victim's body during a single uninterrupted course of conduct.

---

[14] Compare *Lucas v. State*, 328 Ga. App. 741, 743-744 (1) (760 SE2d 257) (2014) (merger required where burglary convictions were based on two entries into the same restaurant, both involved an intent to steal from the restaurant, and the entries were part of a single course of conduct, and "were not separated by a meaningful interval of time or with distinct intentions") (citation and punctuation omitted).

16

If the legislature fails to denote the unit of prosecution in the statute, as is the case here, courts must resolve the ambiguity and are constrained to do so in favor of the defendant charged with having violated the statute. *Bell v. United States*, 349 U. S. 81, 84 (75 SCt 620, 99 LEd 905) (1955). In *Bell*, the United States Supreme Court held that when "argumentative skill . . . could persuasively and not unreasonably reach either of the conflicting constructions," it is improper to resolve the question by turning a single transaction into multiple offenses. *Bell*, 349 U. S. at 83-84. Here, based on a plain reading of the statute, we cannot say for certain that, as written, OCGA § 16-6-4 (a) (1) provides for a separate conviction and punishment for each separate invasion to a victim's body during a single uninterrupted course of conduct.[15] Further, the State presented no evidence to establish that Scott molested the victim in three completed acts separated by a meaningful interval of time or with distinct intentions.[16] Although the victim testified that Scott touched her breasts, vagina, and

---

[15] In *State v. Perrillo*, the Supreme Court of Vermont held that a defendant could only be convicted of one count of lewd and lascivious conduct with a child after he touched both the victim's vulva and her chest "[b]ecause a single episode of sexual misconduct ordinarily involves the wrongdoer touching the victim more than once[.]" 162 Vt 566, 567-568 (I) (649 A2d 1031) (1994) (citation and punctuation omitted).

[16] By contrast, in *State v. Soonalole*, a Washington State appellate court explained that the defendant's conduct constituted two separate and distinct acts of

buttocks while she was in bed, she did not testify as to how much time, if any, elapsed between the touches. As noted by the Court of Appeals of Wisconsin:

> The greater the interval of time between acts constituting an episode of sexually assaultive behavior, the greater the likelihood of separate offenses. That the interval is merely minutes or even seconds, as with the other elements and factors discussed, cannot be a solely determinative factor. The resolution of this factor is not solved by a stopwatch approach. An episode of sexually assaultive behavior can and usually does involve multiple invasions of the intimate parts of the victim's body. Whether such invasions are a single offense or separate offenses can sometimes be placed in perspective by the time interval between specific acts. Of all the identifiable elements and factors, the question of time more than any other circumstance seems to permeate all of the factors. It has its greatest value when it is a frame of reference for consideration of each of the other factors and elements.

*Harrell v. State*, 88 Wis2d 546, 572-573 (2) (277 NW2d 462) (1979). See also *Cullen v. United States*, 886 A2d 870, 873 (D.C. Ct. App. 2005) (concluding that the statute did not "provide for a separate offense for the touching of multiple enumerated body

---

sexual conduct, such that convictions on two child molestation counts did not give rise to double jeopardy violation, where he fondled victim's breasts and rubbed her thighs over her clothes while driving her in car, retreated from victim for remainder of drive, then began fondling victim again after parking car and escalated the sexual contact by attempting to reach under victim's clothing and to reach her vaginal area. 99 Wash. App. 207, 209-214 (992 P2d 541) (2000).

18

parts during a single event when there is no evidence that a defendant has reached a new fork in the road or acted in response to a fresh impulse.").

Despite our conclusion in this case, we are mindful that there are reasons legislators may want to treat child molestation differently from other crimes. Our Supreme Court has made clear that "[t]he State has a compelling governmental interest in the welfare of the children." *Phagan v. State*, 268 Ga. 272, 274 (1) (486 SE2d 876) (1997) (citation and punctuation omitted). "Its interest in safeguarding the physical and psychological well-being of a minor is compelling and beyond the need for elaboration." Id. (citation and punctuation omitted). This interest is especially true with respect to the child molestation statute where "the gravamen of the offense" is to address the unique harms caused by sexual crimes against a child.[17] *Coates*, 304

---

[17] We highlighted the importance of this principle in *State v. Williams*, where we employed the unit-of-prosecution analysis to determine "whether Georgia's statute governing the possession and control of child pornography, OCGA § 16-12-100 (b) (8), allows the State to charge a criminal defendant for each separate and distinct image he or she is alleged to have possessed, or whether the statute instead criminalizes a course of conduct[.]" 347 Ga. App. 183, 183 (818 SE2d 256) (2018). We concluded that OCGA § 16-12-100 (b) (8) "allows for a charge and conviction on each and every image possessed[.]" Id. at 183, 186-187. Specifically, we explained "each illicit image represents an independent abuse of the child victim depicted, and signifies precisely the type of harm OCGA § 16-12-100 seeks to prevent." Id. at 186. We thus reversed the trial court's ruling dismissing Counts 2 through 48 of the indictment, which all charged possession and control of child pornography, as

19

Ga. at 331-332; see *Dixon v. State*, 278 Ga. 4, 4 (1) (596 SE2d 147) (2004) ("The statutory rape and child molestation statutes are part of a legislative framework aimed at protecting children from sexual exploitation and abuse.").

Moreover, we recognize that the conduct underlying Scott's three child molestation convictions, which included his touching the victim's breasts and inserting his finger into her vagina and buttocks, involved trauma to and violated three distinct parts of the victim's body.[18] This scenario contrasts with assault cases,

multiplicitous. Id. at 186-187. The Supreme Court affirmed, but declined to reach the merits of Williams's multiplicity claims, explaining we should have "reversed the trial court's order on the ground that the trial court lacked authority to dismiss or consolidate Counts 2 through 48 of Williams's indictment before trial." *Williams*, __ Ga. at __ (2). Notably, our decision in *Williams* predated the Supreme Court's ruling in *Coates*.

[18] We find guidance in other state and federal cases specifically addressing whether sequential sexual assaults constitute single or separate units of prosecution. In *Harrell v. Israel*, the federal district court rejected the defendant's double jeopardy argument and affirmed rape convictions for two acts of sexual intercourse with the same victim, at the same location, within 25 minutes. 478 FSupp. 752 (E.D. Wis. 1979). The court looked to Wisconsin's rape statute and the legislative intent and determined that rape's "unit of prosecution" was not continuous. Id. at 754-756. As the court stated: "While the means and manner are the same, the intent of [the defendant] was to commit two acts and, therefore, the acts are punishable as separate offenses. In no way can the situation be construed as similar to possessory offenses and bigamy which are by their continuing nature continuous offenses." Id. at 755-756 (citing *In re Snow*, 120 U. S. 274 (7 SCt 556, 30 LEd 658) (1887)). Similarly, in *Vaughan v. State*, the Missouri Court of Appeals rejected the defendant's double jeopardy claim based on two rape convictions for raping the same woman in her bed

20

where courts have found that a series of shots fired or blows administered in quick succession, often in the heat of the moment, do not constitute a renewed assault and thus are subject to merger. See, e.g., *Montes v. State*, 262 Ga. 473, 474 (1) (421 SE2d 710) (1992) (disapproving language in *Pryor v. State*, 238 Ga. 698 (1) (234 SE2d 918) (1977), that each of a series of shots fired in quick succession constitutes a "renewed assault"); *Bonner v. State*, 308 Ga. App. 827, 831 (2) (709 SE2d 358) (2011) (three charges of simple battery "were part of a continuous criminal act and thus merged into one"); *Thompson*, 291 Ga. App. at 360-361 (5). See also *Coleman v. State*, 286 Ga. 291, 295 (687 SE2d 427) (2009) ("When a victim suffers multiple wounds inflicted in quick succession, each infliction of injury does not constitute a separate assault."). Similarly, in possession of firearm cases, "the gravamen of the offense is the general receipt, possession, or transportation of firearms by convicted felons, rather than the specific quantity of firearms received, possessed, or transported." *Coates*, 304 Ga. at 331.

---

within 25 to 55 minutes. 614 SW2d 718, 720-723 (Mo. App. 1981). In determining whether the multiple rapes constituted multiple crimes or a single crime, the court looked to a variety of factors: time, place of commission, and, of most importance, the defendant's intent. Id. at 722. The court found that the defendant formed a separate intent for each rape and that each rape violated the victim's integrity and safety. Id. at 722-723.

21

Nevertheless, in the instant case, based on the text of OCGA § 16-6-4 (a) (1), the General Assembly has not, by clear and unambiguous language, provided that multiple touches to a victim, during a single uninterrupted course of conduct, authorize multiple prosecutions and convictions for separate acts of child molestation. Our Supreme Court has instructed "that if reasonable minds disagreed as to whether the statute is, in fact, ambiguous, the rule of lenity would require us to interpret it in favor of the defendant." *Coates*, 304 Ga. at 332 n. 4 (citation and punctuation omitted); see also *Bell*, 349 U. S. at 83 ("When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.").

Applying the rule of lenity here, as required absent a clear mandate, we are compelled to hold that Scott's conduct, as outlined in Counts 2, 3, and 4 of the indictment, in violation of OCGA § 16-6-4 (a) (1), constitutes a single unit of prosecution for which he is subject to only one conviction and sentence. We are therefore constrained to vacate Scott's child molestation convictions and sentences on Counts 2, 3, and 4 and remand to the trial court for resentencing on a single

count[19] in compliance with OCGA § 17-10-6.2 (b).[20] If the General Assembly intends for OCGA § 16-6-4 (a) (1) to punish each separate invasion of a protected area of a victim's body in a single uninterrupted course of conduct, we urge the General Assembly to "employ[] such clear, unambiguous language" to specify the unit of prosecution accordingly. *Coates*, 304 Ga. at 332.

*Judgment vacated and case remanded with direction. Mercier and Hodges, JJ., concur.*

---

[19] Scott's remaining child molestation conviction and sentence on Count 5 was not subject to merger and remains in effect as a separate conviction.

[20] As we noted in Division 6 of our original opinion, the trial court failed to impose such a sentence in this case. See *Scott*, Case No. A18A0751, slip op. at 18 (6).