306 Ga. 507
FINAL COPY

S18G1644. SCOTT v. THE STATE.

PER CURIAM.

In Division 2 of its unpublished opinion in this case, the Court of Appeals applied the wrong legal analysis in deciding that the four counts of child molestation of which Akeem Scott was found guilty do not merge. See *Scott v. State*, 346 Ga. App. XXIV (Case No. A18A0751), (June 29, 2018) (unpublished). We grant Scott's petition for a writ of certiorari to address that issue, vacate that division of the Court of Appeals' opinion, and remand for that court to determine and apply the unit of prosecution for the crime of child molestation in deciding how many convictions and sentences for that crime may be imposed on Scott.[1]

---

[1] Our rules contemplate that we may in some cases grant a petition for certiorari and dispose of the case summarily, without full briefing and oral argument. See Supreme Court Rule 50 (2). See also *Jordan v. Everson*, 302 Ga. 364, 366 n.2 (806 SE2d 533) (2017). We have determined that the other issues Scott raises in his petition do not warrant further review, so our grant of certiorari and our remand to the Court of Appeals are limited to the merger

1. A Fulton County jury found Scott not guilty of aggravated sexual battery but guilty of four counts of child molestation in violation of OCGA § 16-6-4 (a) (1).[2] The evidence at trial showed that on the night of February 6, 2011, the victim, who was then 11 years old, awoke to see Scott standing next to her bed; as she put her head back down to go back to sleep, she felt Scott reach under her clothes to fondle her breasts, buttocks and anal area, and vagina, inserting his finger into both her anus and vagina. When the victim then got out of bed to use the bathroom, Scott picked the lock on the bathroom door and opened it to watch the victim urinate, despite her telling him three times to get out. Three of the child molestation counts were based on the bedroom incident: Count 2 of the indictment was based on Scott's touching the victim's breasts, Count 3 on his

issue.

[2] OCGA § 16-6-4 (a) (1) says: "A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" With an exception not applicable here, "a person convicted of a first offense of child molestation shall be punished by imprisonment for not less than five nor more than 20 years and shall be subject to the sentencing and punishment provisions of Code Sections 17-10-6.2 and 17-10-7." OCGA § 16-6-4 (b) (1).

touching her buttocks, and Count 4 on his touching her vagina. The final count (Count 5) was based on the bathroom incident. The trial court entered a judgment of conviction on all four child molestation counts and sentenced Scott to 20 years on each of the four counts, all to be served consecutively, with 40 years to serve in prison and the remaining 40 years suspended.

On appeal, Scott claimed, among other things, that the trial court should have merged Counts 2, 3, and 4 and imposed only one conviction and sentence for child molestation based on his uninterrupted touching of three parts of the victim's body during the bedroom incident. The Court of Appeals rejected that claim (and Scott's other claims). The court evaluated the merger claim using the "required evidence" test that this Court set forth in *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006), to determine if one crime is included in another and therefore merges with the other crime. See *Scott*, slip op. at 17. That test turns on whether each offense required "'proof of a fact which the other [did] not.'" Id. (quoting *Drinkard*, 281 Ga. at 215). The Court of Appeals reasoned

3

that in this case, to convict Scott on Counts 2, 3, and 4, the State had to prove different facts, namely, "the State had to prove that Scott touched three different and distinct parts of [the victim's] body." Id. The court therefore held that the counts did not merge, citing in support its prior decisions in *Daniel v. State*, 292 Ga. App. 560, 565-566 (665 SE2d 696) (2008), and *Frazier v. State*, 241 Ga. App. 125, 126 (524 SE2d 768) (1999). See *Scott*, slip op. at 17-18.

Scott then petitioned for a writ of certiorari, arguing among other things that the Court of Appeals erred in applying the "required evidence" test to the merger question presented by this case. We agree.

2. "Merger" refers generally to situations in which a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law, can be punished — convicted and sentenced — for only one of those crimes. See generally OCGA § 16-1-7 (a); *Drinkard*, 281 Ga. at 212. Merger analysis often involves counts charging two *different* crimes. As this Court has made clear, that is

4

the context in which *Drinkard*'s "required evidence" test is applied. See *Smith v. State*, 290 Ga. 768, 773 n.4 (723 SE2d 915) (2012) ("[T]he 'required evidence' test [only applies] 'where the same act or transaction constitutes a violation of *two distinct statutory provisions*[.]'" (emphasis in original) (quoting *Drinkard*, 281 Ga. at 215)).[3]

But merger questions may also arise when a defendant is charged with multiple counts of the *same* crime — which is the situation in this case, where Scott was charged with and found guilty of four counts of child molestation. In this context, the merger analysis requires careful interpretation of the criminal statute at

---

[3] In the *Daniel* case cited by the Court of Appeals, the court's use of the *Drinkard* test was appropriate, because the question was whether a count charging aggravated sexual battery in violation of OCGA § 16-6-22.2 (b) merged with a count charging child molestation in violation of OCGA § 16-6-4 (a). See *Daniel*, 292 Ga. App. at 565-566. We also note that the "facts" of crimes to which the *Drinkard* test refers are the *elements* of the two crimes at issue, not the particular facts describing how those crimes were committed. See *Drinkard*, 281 Ga. at 216-217. Thus, Scott's "touch[ing] three different and distinct parts of [the victim's] body," *Scott*, slip op. at 17, does *not* mean that each child molestation count related to the bedroom incident required proof of a different *Drinkard* "fact." Indeed, applying the *Drinkard* test to counts charging the same statutory offense would *always* result in merger, because the same crime has the same elements; this illustrates why the "required evidence" test is inappropriate in this context.

issue to identify the "'unit of prosecution'" — "'the precise act or conduct'" that the legislature criminalized. *Smith*, 290 Ga. at 773 (emphasis omitted) (quoting *State v. Marlowe*, 277 Ga. at 383, 384 (589 SE2d 69) (2003)). See also *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018).

The Court of Appeals failed to engage in the applicable unit-of-prosecution analysis in its unpublished opinion here, in the published *Frazier* opinion that it cited, see 241 Ga. App. at 126, and in its other published opinions holding that multiple counts of child molestation did not merge, see, e.g., *Carver v. State*, 331 Ga. App. 120, 122 (769 SE2d 722) (2015); *Chalifoux v. State*, 302 Ga. App. 119, 119-120 (690 SE2d 262) (2010); *Metts v. State*, 297 Ga. App. 330, 336 (677 SE2d 377) (2009); *Parker v. State*, 283 Ga. App. 714, 721-722 (642 SE2d 111) (2007); *Lunsford v. State*, 260 Ga. App. 818, 820-821 (581 SE2d 638) (2003); *Eggleston v. State*, 247 Ga. App. 540, 543 (544 SE2d 722) (2001).[4]  In some of those cases, where the acts of child

---

[4] Some of these cases were decided using, or trace back to cases decided using, the "actual evidence" test that *Drinkard* overruled.  See, e.g., *Lunsford*,

molestation appear to have occurred in discrete incidents, precisely identifying the applicable unit of prosecution may not affect the merger decision. See, e.g., *Carver*, 331 Ga. App. at 120, 122; *Metts*, 297 Ga. App. at 336. But where, as here, the acts of molestation alleged in different counts were part of a single course of conduct occurring in a relatively short time frame, the unit of prosecution could determine if the defendant faces multiple, consecutive 20-year sentences or only one sentence. See, e.g., *Chalifoux*, 302 Ga. App. at 119-120; *Parker*, 283 Ga. App. at 714-715, 721-722; *Lunsford*, 260 Ga. App. at 819-821; *Eggleston*, 247 Ga. App. at 541, 543; *Frazier*, 241 Ga. App. at 125-126. Accordingly, it is important to conduct the applicable analysis, and it is appropriate for the Court of Appeals to do it in the first instance.

For these reasons, we grant Scott's petition for a writ of certiorari as to the merger issue, vacate Division 2 of the Court of

---

260 Ga. App. at 820-821; *Eggleston*, 247 Ga. App. at 543. See also *Young v. State*, 327 Ga. App. 852, 861 n.34 (761 SE2d 801) (2014) (recognizing that the "actual evidence" test no longer applies but still not discussing the applicable unit of prosecution).

7

Appeals' opinion, and remand the case for that court to determine and apply the unit of prosecution for child molestation to the merger issue presented.

*Petition for writ of certiorari granted, judgment vacated in part, and case remanded with direction. All the Justices concur, except Bethel and Ellington, JJ., disqualified.*

PETERSON, Justice, concurring.

I concur fully in the Court's decision, including in its

8

determination that, aside from the merger issue we decide today, the issues raised in the petition for certiorari do not warrant further review. I write to note that one of those issues warrants review in a future case in which the issue is preserved.

The petitioner claims that the trial court violated his right to a public trial under the Sixth Amendment to the United States Constitution and Article I, Section I, Paragraph XI (a) of the Georgia Constitution[5] when, as required by OCGA § 17-8-54, it closed the courtroom to certain spectators, including some members of his family, during the testimony of the minor victim. This is not the right case to grant certiorari on that issue because the Court of Appeals held it was waived, and that holding is not obviously wrong. I nevertheless write separately to highlight this recurring issue for the bench and bar.

---

[5] The Sixth Amendment provides that "the accused shall enjoy the right to a . . . public trial[.]" The Georgia Constitution's corollary first entered the Georgia Constitution in 1861 and has provided ever since that, in criminal cases, the defendant "shall have a public . . . trial[.]" The discussion that follows addresses only a claim under the Sixth Amendment. It is not obvious that the same analysis would apply to a claim under the Georgia provision, but this case does not require us to consider any differences given the petitioner's failure to preserve a claim under either provision.

This is not the first time that we have denied a petition for certiorari raising an unpreserved claim that the trial court erred in closing a portion of a trial to certain persons under OCGA § 17-8-54. See, e.g., *Chamberlain v. State*, 347 Ga. App. 775 (819 SE2d 303) (2018), cert. denied August 5, 2019; *Preston v. State*, (334 Ga. App. XXVII Case No. A15A0885 (October 10, 2015) (unpublished), cert. denied (Case No. S16C0375) January 19, 2016. It is not surprising that defendants fail to preserve such claims, because the Court of Appeals repeatedly has held that a "partial" courtroom closure under OCGA § 17-8-54 does not violate a defendant's constitutional right to a public trial even when the closure is ordered without any case-specific findings. See, e.g., *Tolbert v. State*, 321 Ga. App. 637, 637 (1) (742 SE2d 152) (2013); *Clark v. State*, 309 Ga. App. 749, 751 (2) (711 SE2d 339) (2011); *Goldstein v. State*, 283 Ga. App. 1, 4 (2) (640 SE2d 599) (2006); *Hunt v. State*, 268 Ga. App. 568, 571 (1) (602 SE2d 312) (2004).

But it is not clear that the Court of Appeals has analyzed the issue correctly in the light of the considerable relevant case law. In

addition to the Sixth Amendment's protection of the right of the accused to a public trial, see, e.g., *Waller v. Georgia*, 467 U. S. 39, 46 (104 SCt 2210, 81 LE2d 31) (1984), the United States Supreme Court has long held that the First Amendment includes a right of the press and general public to access criminal trials. See *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U. S. 596, 603 (102 SCt 2613, 73 LE2d 248) (1982) (citing plurality and three concurring opinions in *Richmond Newspapers, Inc. v. Virginia*, 448 U. S. 555 (100 SCt 2814, 65 LE2d 973) (1980)).[6] And although these

---

[6] The United States Supreme Court has acknowledged that "[t]he extent to which the First and Sixth Amendment public trial rights are coextensive is an open question[.]" *Presley v. Georgia*, 558 U. S. 209, 213 (130 SCt 721, 175 LE2d 675) (2010). In particular, Justice Thomas has questioned whether the Sixth Amendment right extends to voir dire. See id. at 216-218 (Thomas, J., dissenting, joined by Scalia, J.); see also *Weaver v. Massachusetts*, __ U. S. __, __ (137 SCt 1899, 1914, 198 LE2d 420) (2017) (Thomas, J., concurring, joined by Gorsuch, J.). But any doubt about the kinds of proceedings to which the Sixth Amendment right applies is not implicated here; the testimony of the victim during a criminal trial undoubtedly is at the core of the right. And the Supreme Court has held that, at least where a particular proceeding falls within the Sixth Amendment right to a public trial, a closure over the defendant's objection under the Sixth Amendment must meet the same standards that apply to an objection under the First Amendment. *Waller*, 467 U. S. at 47 ("[W]e hold that under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in [*Press-Enterprise Co. v. Superior Court of Ca.*, 464 U. S. 501 (104 SCt 819, 78 LE2d 629) (1984), a First Amendment case,] and its predecessors.").

rights "may give way in certain cases to other rights or interests," such circumstances are "rare." Id. at 45.

The United States Supreme Court long ago made explicit in a case involving a statute similar to OCGA § 17-8-54 that the First Amendment demands a case-by-case determination of whether a courtroom may be closed. In *Globe Newspaper*, the Court held that a Massachusetts statute mandating exclusion of the press and general public from the courtroom for the testimony of minor victims of certain sexual offenses violated the First Amendment right of access because it did not require a case-by-case determination of whether closure was appropriate. 457 U. S. at 607-611. Although the Court rightly acknowledged that the State's interest in "safeguarding the physical and psychological well-being of a minor" was "a compelling one[,]" the Court explained that,

> as compelling as that interest is, it does not justify a *mandatory* closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest. A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim.

Id. at 607-608 (emphasis in original). In particular, the Court noted

12

that "the factors to be weighed are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." Id. at 608. And lest any confusion remain, the Court made clear that simply applying a mandatory closure rule, with no consideration of the particular circumstances presented by the case, does not satisfy the Constitution:

> We emphasize that our holding is a narrow one: that a rule of mandatory closure respecting the testimony of minor sex victims is constitutionally infirm. In individual cases, and under appropriate circumstances, the First Amendment does not necessarily stand as a bar to the exclusion from the courtroom of the press and general public during the testimony of minor sex-offense victims. But a mandatory rule, requiring no particularized determinations in individual cases, is unconstitutional.

Id. at 611 n.27.

Three years after *Globe Newspaper*, the Georgia General Assembly enacted OCGA § 17-8-54. See Ga. L. 1985, p. 1190, § 1. That statute — under which the trial court closed the courtroom here — imposes a mandatory closure rule:

In the trial of any criminal case, when any person under

13

the age of 16 is testifying concerning any sexual offense, the court *shall* clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, victim assistance coordinators, victims' advocates, and such other victim assistance personnel as provided for by Code Section 15-18-14.2, jurors, newspaper reporters or broadcasters, and court reporters.

OCGA § 17-8-54 (emphasis added).[7]

None of the published Georgia Court of Appeals decisions

---

[7] Unlike the statute at issue in *Globe Newspaper*, the General Assembly excluded "newspaper reporters or broadcasters" from the scope of the mandatory closure. Of course, these days the "press" is likely broader than just "newspaper reporters or broadcasters." But even if we read that text as applying to all members of the press regardless of format, the First Amendment right does not belong only to the press; it also belongs to the public. In some cases the presence of the press may be sufficient protection of the Sixth Amendment right to a public trial. Cf. *Globe Newspaper*, 457 U. S. at 608 n.22 (citing Florida statute providing for mandatory exclusion of general public but not press during testimony of minor victims but appearing to express no view on its constitutionality); compare *State v. Turrietta*, 308 P3d 964, 972-973 (N.M. 2013) (rejecting argument that closure was narrowly tailored given that press, attorneys, staff, and families of victim and defendant were allowed to remain); with *Douglas v. Wainwright*, 714 F2d 1532 (11th Cir. 1983) (noting that actual presence of and reporting by the press, in contrast with press merely being "allowed" to be present, may safeguard public trial right even where general public is excluded), vacated by 468 U. S. 1212 (104 SCt 3580, 82 LE2d 879) (1984), reinstated by 739 F2d 531 (11th Cir. 1984); and *Clements v. State*, 742 S2d 338, 341-342 (Fla. Dist. Ct. App. 1999) (holding that *Waller* inquiry not required in cases where a partial closure order is entered pursuant to Florida statute; "The press, as the eyes and ears of the public, is allowed to remain. As the public's proxy, the presence of the press preserves a defendant's constitutional right to a public trial."). But mere statutory permission for the press to be present seems less significant if, in fact, no member of the press was ever present in the first place.

affirming partial courtroom closures mandated by OCGA § 17-8-54, nor the unpublished opinion issued in this case, has cited *Globe Newspaper*, let alone grappled with its direction that a case-by-case analysis is required. But see *Jackson v. State*, 339 Ga. App. 313, 319-320 (2) (b) (793 SE2d 201) (2016) (acknowledging *Globe Newspaper*'s recognition of the State's compelling interest in safeguarding the well-being of minor victims of sex crimes in concluding that *total* closure of courtroom without adequate findings by trial court violated appellant's Sixth Amendment rights). Instead, the Georgia Court of Appeals has suggested that OCGA § 17-8-54 reflects "a legislative determination that there is a compelling state interest in protecting children while they are testifying concerning a sex offense," and that this legislative determination obviates the need for the trial court to perform further analysis about the particulars of the case before excluding spectators pursuant to the statute. *Hunt*, 268 Ga. App. at 571 (1).

Georgia courts may have overlooked *Globe Newspaper* in part because two years after that decision — and one year before passage

15

of OCGA § 17-8-54 — the Supreme Court outlined more specific guidelines for determining when a court proceeding may be closed. In that decision, which reversed a decision of this Court under the Sixth Amendment, the Court provided that where a courtroom is "closed" for some period of time,

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller*, 467 U. S. at 48. But *Waller* did nothing to undermine *Globe Newspaper*'s dictate that application of a mandatory closure rule without consideration of the particular circumstances presented by the case does not pass constitutional muster.

Nonetheless, in concluding that OCGA § 17-8-54 obviates the need for the trial court to consider the particular facts of the case, the Georgia Court of Appeals has relied on federal circuit case law suggesting that a trial court's obligations are more limited when it excludes only certain persons from a courtroom. See *Hunt*, 268 Ga.

16

App. at 571 (1) (citing *Judd v. Haley*, 250 F3d 1308, 1315 (11th Cir. 2001)). Indeed, it appears that every federal circuit to have decided the matter, including the Eleventh Circuit, has announced a lower standard for so-called "partial" closures, requiring only a "substantial" reason for closing the courtroom to some, but not all, spectators. See *United States v. Laureano-Pérez*, 797 F3d 45, 77 (1st Cir. 2015); *United States v. Smith*, 426 F3d 567, 572 (2d Cir. 2005); *United States v. Cervantes*, 706 F3d 603, 611-612 (5th Cir. 2013); *United States v. Simmons*, 797 F3d 409, 414 (6th Cir. 2015); *United States v. Thompson*, 713 F3d 388, 395 (8th Cir. 2013); *United States v. Yazzie*, 743 F3d 1278, 1288 n.4 (9th Cir. 2014); *United States v. Addison*, 708 F3d 1181, 1187 (10th Cir. 2013); *United States v. Flanders*, 752 F3d 1317, 1337 (11th Cir. 2014).[8] But there appears

---

[8] But see *Bell v. Jarvis*, 236 F3d 149, 168 n.11 (4th Cir. 2000) (en banc) (finding it unnecessary to address standard for partial closures in concluding that trial court closing courtroom under statute permitting but not mandating closure must have made *Waller* findings); *Tucker v. Superintendent Graterford SCI*, 677 Fed. Appx. 768, 775 n.9 (3d Cir. 2017) (finding it unnecessary to address standard for partial closures); *United States v. Perry*, 479 F3d 885, 889-891 & n.4 (D.C. Cir. 2007) (acknowledging other circuits' "substantial" interest standard but analyzing exclusion of defendant's minor son under "triviality" standard).

17

to be a circuit split among even those circuits as to whether a court excluding only some persons from a proceeding still must consider the other *Waller* factors — narrow tailoring and reasonable alternatives — and make adequate findings to support the closure. Compare *Laureano-Pérez*, 797 F3d at 77-78 (requiring only "substantial" interest to justify partial closure but also considering other three prongs of *Waller* test); *Smith*, 426 F3d at 572-574 (same); *Simmons*, 797 F3d at 414-415 (same); with *Judd*, 250 F3d at 1315 (noting that "a court need merely find a 'substantial' reason for [a] partial closure, and need not satisfy the elements of the more rigorous *Waller* test"). Even the Eleventh Circuit, which has said that the trial court need not apply all of the *Waller* factors in the event of a partial closure, requires a trial court contemplating excluding *any* spectators from a court proceeding to hold a hearing and make adequate findings when a defendant objects and asks to be heard. Id. at 1315; *Douglas v. Wainwright*, 739 F2d 531, 533 n.2 (11th Cir. 1984). And the United States Supreme Court has not told us that courts may disregard the *Waller* standard where fewer than

all spectators are excluded from the courtroom. See *Bell v. Jarvis*, 236 F3d 149, 168 n.11 (4th Cir. 2000) (en banc) ("the Supreme Court has never set forth a less rigorous standard for partial closures").

Of course, Georgia trial judges are bound by the holdings of decisions of the Georgia Court of Appeals. See Ga. Const. Art. VI, Sec. V, Par. III. But they — as we — are also bound by the federal constitutional holdings of the Supreme Court of the United States. And given that the "exclusive appellate jurisdiction" over appeals involving constitutional challenges to Georgia statutes is vested in this Court, see Ga. Const. Art. VI, Sec. VI, Par. II, the decisions of the Court of Appeals discussed here cannot properly be understood to have decided the constitutionality of OCGA § 17-8-54.

Accordingly, when an issue of courtroom closure under OCGA § 17-8-54 has been properly raised, it may be prudent for a Georgia trial judge to consider whether an application of the *Waller* factors would allow closure as the statute requires. If such closure would not be allowed after considering the factors, the trial court should then proceed to determine whether the statute is constitutional. And

we should grant a petition for certiorari on this issue when a proper case presents itself.

DECIDED AUGUST 19, 2019.

Certiorari to the Court of Appeals of Georgia — 346 Ga. App. XXIV.

*Margaret E. Bullard, Lauren B. Shubow*, for appellant.

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellee.