**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 7, 2022**

# In the Court of Appeals of Georgia

A21A1391. CARR v. THE STATE.

DILLARD, Presiding Judge.

David Carr appeals his convictions for numerous child-sex offenses, contending the evidence was insufficient to support them and the trial court erred in failing to merge some of his convictions for sentencing purposes. For the reasons set forth *infra*, we affirm in part, vacate in part, and remand this case for proceedings consistent with this opinion.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that during the relevant time period, Ta. C. lived with Carr, her mother, her sister (Ti. C.), and her brother. When Ta. C. was in sixth grade, Carr began inserting his finger into her vagina on numerous occasions. Then, when Ta. C. was in eighth grade, Carr

---

[1] *See, e.g.*, *Cawthon v. State*, 350 Ga. App. 741, 741 (830 SE2d 270) (2019).

would sometimes get into Ta. C.'s bed with her, lay behind her, and touch her vagina. Carr also touched Ta. C.'s chest area, both under and over her clothes. In early January 2016, Carr came into Ta. C.'s room and touched her under her clothes on her "breasts and on [her] vagina area[,]" which made her cry.

Shortly after that incident, when Ta. C. was upset about not being allowed to go out with friends, Carr told her that it did not matter to him if she was angry, the sexual abuse was going to end, and he did not care if she told her mom about the abuse or "if [he] went to jail tomorrow." After this conversation, Ta. C. called her boyfriend and told him about the abuse she suffered in detail, and he advised her to tell her mother about it. Ta. C.'s boyfriend also suggested that she tell her younger sister, Ti. C., but instead, she let him do it. And when Ti. C. learned Carr was sexually abusing her sister, she "broke down and told [Ta. C.] that it was happening to her too."

Ti. C. estimated that Carr began sexually abusing her in fourth grade, but she was not entirely sure. Carr touched Ti. C. on her "lower private area" over the clothes "more times than [she] could really count." He also touched Ti. C.'s "lower private area" under the clothes approximately five times. When he did so, he would place pressure inside of that area with his hands. Carr would occasionally stop the abuse for

2

a month or two, and Ti. C. described the frequency of the abuse as "kind of like a cycle."

On the same day in early January 2016, when Ti. C. learned that Carr was also sexually abusing Ta. C., the girls' mother came into the room and asked Ta. C.—who was crying—why she was upset. The girls did not want to tell their mother about the abuse verbally, so they both wrote notes describing what happened to them. Ta. C. wrote that she was in middle school when the abuse first occurred, and the most recent time Carr abused her was earlier that week. Indeed, according to Ta. C., Carr's sexual abuse continued periodically until she was a sophomore in high school. Ti. C. wrote a similar note describing the abuse detailed above. The girls' mother reacted calmly, telling them they would act like everything was normal and go to the police after Carr fell asleep. And that night, after Carr fell asleep, Ta. C., Ti. C., and their mother went to the police station to report Carr's abusive conduct.

Thereafter, Carr was charged, via indictment, with aggravated battery, four counts of child molestation, four counts of sexual battery, and two counts of first-degree cruelty to children. And following trial, he was convicted of all charged offenses. Carr then filed a motion for a new trial, which was denied after a hearing. This appeal follows.

3

1. In describing his second claim of error (which we address first), Carr summarily states the evidence was insufficient to support all eleven of his convictions. But because he does not make any cognizable arguments to support this contention, he has abandoned it.

Despite arguing the evidence was insufficient to support all of his convictions, he does not discuss any particular conviction, their respective elements, or the evidence supposedly lacking at trial. Instead, he merely provides a laundry list of mostly irrelevant legal citations and statutes with no corresponding claim, discussion, or argument of any kind. Specifically, Carr recites the law regarding (1) the standard of review for sufficiency claims; (2) his right to an appeal; (3) his right to effective appellate counsel; (4) Georgia's ban on appellate attorneys in criminal cases filing *Anders*[2] briefs; and (5) the requirement that defendants must comply with trial and appellate procedures to be entitled to *habeas corpus* relief. Finally, he states that he is entitled to review of "any claim which affords him relief," and thus, the jury verdict should be reversed. Under these circumstances, Carr has provided us with no

[2] *See Anders v. California,* 386 U.S. 738 (87 SCt 1396, 18 LE2d 493) (1967); *see also Huguley v. State*, 253 Ga. 709, 710 (2) (324 SE2d 729) (1985) ("We now hold that in the future *Anders* motions will not be granted by this [C]ourt. We conclude that the *Anders* motion is unduly burdensome in that it tends to force the court to assume the role of counsel for the appellant.").

argument related to any of the legal authorities he lists, much less any argument regarding the sufficiency of the evidence underlying his convictions.[3]

In reaching the foregoing conclusion, we acknowledge the significant liberty interests at stake when reviewing the sufficiency of the evidence to support a

---

[3] *See Farmer v. Dep't of Corr.*, 346 Ga. App. 387, 394 (2) (816 SE2d 376 (2018) ("[M]ere conclusory statements are not the type of meaningful argument contemplated by our rules." (punctuation omitted)); *Woods v. Hall*, 315 Ga. App. 93, 96 (726 SE2d 596) (2012) ("[A]n assertion of error followed by a case citation is *not* legal argument, which requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts," (punctuation omitted)); *Time Warner Entm't Co. v. Six Flags Over Ga., LLC,* 254 Ga. App. 598, 605 (3) (a) (563 SE2d 178) (2002) (deeming an error abandoned when the appellants failed to cite to any relevant facts, give record citations, or present any legal analysis supporting their assertion); *Reed v. City of Atlanta*, 136 Ga. App. 193, 194 (4) (220 SE2d 492) (1975) (holding that an enumeration of error is neither argued nor briefed on appeal is considered abandoned); CT. APP. R. 25 (c) (2) (providing that "[a]ny enumeration of error that is not supported in the brief by citation of authority *or argument* may be deemed abandoned" (emphasis supplied)); *see also* Stephen Louis A. Dillard, *Open Chambers Revisited: Demystifying the Inner Workings and Culture of the Georgia Court of Appeals*, 68 Mercer L. Rev. 1, 7 (II) (2016) ("The quickest way to sabotage your appeal is to fail to substantiate legal arguments or key factual or procedural assertions."). Carr has also abandoned his challenge to the sufficiency of the evidence to support his convictions because he does not provide a single citation to the record, much less one related to the evidence presented. *See Fleming v. Advanced Stores Co.*, 301 Ga. App. 734, 735 (688 SE2d 414) (2009) ("It is not the function of this [C]ourt to cull the record on behalf of a party in search of instances of error." (punctuation omitted)); CT. APP. R. 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court *will not search for and may not consider that enumeration.*" (emphasis supplied)).

conviction. Nevertheless, the Supreme Court of Georgia recently discontinued its practice of examining such claims when the issue is neither briefed nor meaningfully argued on appeal.[4] In doing so, our Supreme Court advised that "it is almost always a better course to decide the appeal the parties bring us, rather than the appeal we might have brought were we in counsel's shoes."[5] Lastly, and particularly relevant here, failing to acknowledge that an appellate attorney filed an insufficient brief in a criminal case "may . . . frustrate future habeas corpus review."[6] Thus, we decline to evaluate this abandoned claim of error on the merits.

---

[4] *See Davenport v. State*, 309 Ga. 385, 396 (4) (b) (846 SE2d 83) (2020) ("We cannot now identify a compelling reason to retain our current practice of sua sponte review of the sufficiency of the evidence in cases in which the appellant is not sentenced to death, and there are good reasons to abandon that practice." (emphasis omitted).

[5] *Id.* at 398 (4) (b); *see Rowland v. State*, 264 Ga. 872, 874 (1) (452 SE2d 756) (1995) ("The attempts to provide sua sponte appellate review of criminal appeals notwithstanding incomplete appellate filings, while laudable, do a disservice to the courts, the criminal defendant, and appellate counsel.").

[6] *Woody v. State*, 229 Ga. App. 823, 824 (1) (494 SE2d 685) (1997); *see Rowland*, 264 Ga. at 874 (1) (explaining that attempts to provide *sua sponte* appellate review of criminal appeals notwithstanding incomplete appellate filings may "foreclose future habeas review of assertions of error on the ground that review of the errors is procedurally defaulted since they could have been raised in the direct appeal").

2. Carr next argues the trial court erred in failing to merge several of his child-molestation and sexual-battery convictions for sentencing purposes. We agree the trial court erred in failing to merge some of the counts at issue.

Recently, in *Scott v. State*[7] (*Scott I*), the Supreme Court of Georgia explained the law as to merger analysis. Merger usually occurs when "a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law, can be punished—convicted and sentenced—for only one of those crimes."[8] The *Scott I* Court explained that "[m]erger

---

[7] 306 Ga. 507 (832 SE2d 426) (2019).

[8] *Id.* at 509 (2); *accord Dukes v. State*, 311 Ga. 561, 571 (4) (858 SE2d 510) (2021); *see* U.S. Const. Amend. 5 ("No person . . . shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); Ga. Const. Art. 1, § 1, XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial.").

analysis often involves counts charging two *different* crimes,"[9] and made clear "that

is the context in which *Drinkard's* [[10]] 'required evidence' test is applied."[11]

But merger questions may also arise when "a defendant is charged with

multiple counts of the *same* crime"[12]—which is the situation here because Carr was

charged with and found guilty of four counts of child molestation and four counts of

sexual battery. And *this type* of merger analysis "requires careful interpretation of the

criminal statute at issue to identify the 'unit of prosecution'—'the precise act or

conduct' that the legislature criminalized."[13] Indeed, whether a particular course of

---

[9] *Scott I*, 306 Ga. 509 (2); *accord Dukes*, 311 Ga. at 571 (4).

[10] *Drinkard v. Walker*, 281 Ga. 211, 214 (636 SE2d 530) (2006); *see Smith v. State*, 290 Ga. 768, 772 (3) n.4 (723 SE2d 915) (2012) ("[T]he 'required evidence' test [only applies] where the same act or transaction constitutes a violation of two distinct statutory provisions[.]" (quoting *Drinkard*, 281 Ga. at 215)).

[11] *Scott I*, 306 Ga. 509 (2).

[12] *Id.*; *accord Dukes*, 311 Ga. at 571 (4); *Hogg v. State*, 356 Ga. App. 11, 17 (2) (b) (846 SE2d 183) (2020).

[13] *Scott I*, 306 Ga. 509 (2) (punctuation omitted); *accord Dukes*, 311 Ga. at 571 (4); *see Smith*, 290 Ga. at 773 (3) n.4 (explaining that in situations where "a course of conduct can result in multiple violations of the same statute[,] [t]he United States Supreme Court has held that this question requires a determination of the 'unit of prosecution' or the precise act or conduct that is being criminalized under the statute" (punctuation omitted)).

8

conduct "involves one or more distinct 'offenses' under the statute depends on this legislative choice."[14]

In some child-molestation cases, "where the acts . . . appear to have occurred in discrete incidents," the *Scott I* Court explained that "precisely identifying the applicable unit of prosecution may not affect the merger decision."[15] On the one hand, when a rational trier of fact could conclude the criminal acts "occurred in discrete incidents over a relatively long period, . . . the State [is] authorized to charge the two crimes in two separate units of prosecution."[16] On the other hand, when the criminal acts alleged in different counts of the indictment "were part of a single course of conduct occurring in a relatively short time frame, the unit of prosecution could determine if the defendant faces multiple, consecutive . . . sentences or only one sentence."[17] As a result, the course-of-conduct evaluation "may involve examining

---

[14] *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018) (punctuation omitted); *accord Edvalson v. State*, 310 Ga. 7, 8 (849 SE2d 204) (2020).

[15] *Scott I*, 306 Ga. at 510 (2); *accord Hogg*, 356 Ga. App. at 17 (2) (b).

[16] *Hogg*, 356 Ga. App. at 17 (3) (b) (punctuation omitted); *accord Cobb v. State*, 356 Ga. App. 187, 192 (2) (b) (843 SE2d 912) (2020).

[17] *Scott I*, 306 Ga. at 510 (2); *see Johnson v. State*, ___ Ga. ___ , ___ (3), No. S21G0673, 2022 WL 162799, at *3 (3) (2022) ("When a defendant enumerates a merger error after being convicted of multiple counts of the same crime, the correct

9

whether the defendant acted with the same or differing intents, whether the crimes occurred at the same place, and whether the crimes occurred at the same time or were separated by some meaningful interval of time."[18] Finally, whether offenses merge is "a legal question, which an appellate court reviews de novo."[19] With this analytical framework in mind, we will address each of Carr's merger arguments in turn.

---

merger analysis requires courts to ask whether those crimes arose from 'a single course of conduct' and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis.").

[18] *Johnson*, ___ Ga. at ___ (2), No. S21G0673, 2022 WL 162799, at *4 (2); *see, e.g.*, *Spears v. State*, 296 Ga. 598, 602 (2) (769 SE2d 337) (2015) (holding that the defendant engaged in two separate courses of conduct and could be convicted of two burglaries when "the evidence showed he made one entry of [the victim's] house with the dual intent to commit a theft and to murder her but that he then left the victim's house, drove to a church, returned to the house after realizing that he failed to steal the victim's cigarette case containing money, and reentered the house with the intent to commit the theft of the cigarette case and money"), *disapproved of on other grounds by Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018); *Lucas v. State*, 328 Ga. App. 741, 743 (1) (760 SE2d 257) (2014) (holding that the defendant's "acts of entering, exiting, and reentering the same restaurant twice within a five to twenty-minute period for the purpose of committing theft" could not be punished as two separate burglaries because, among other things, "the acts were committed at the same location, were inspired by the same criminal intent (to commit theft in the . . . restaurant building), were part of a continuous criminal act spanning a matter of minutes[,] [and] were not separated by a meaningful interval of time or with distinct intentions" (punctuation omitted)).

[19] *Womac v. State*, 302 Ga. 681, 684 (3) (808 SE2d 709) (2017) (punctuation omitted).

10

(a) *Child Molestation.* As to Carr's child-molestation charges, this Court's recent holding in *Scott v. State* (*Scott II*)[20] determined the unit of prosection provided for in OCGA § 16-6-4 (a) (1)— "a *single unit of prosecution* for which [a defendant] is subject to only one conviction and sentence."[21] In doing so, we explained that—despite the statute's failure to set forth a unit of prosecution—the General Assembly had not, "by clear and unambiguous language, provided that multiple

---

[20] 356 Ga. App. 152 (846 SE2d 241) (2020). In *Scott I*, our Supreme Court held this Court erred in the underlying appeal by applying the required-evidence test, rather than the unit-of-prosecution analysis, in determining whether three child-molestation counts merged as a matter of law. *See Scott I*, 306 Ga. at 509-10 (2). *Scott I* then explained the proper application of the unit-of-prosecution test, and remanded the case to this Court to apply it in determining whether the child-molestation convictions at issue merged, *see id.*, which we did in *Scott II*, *see infra* notes 21-22 & accompanying text.

[21] *Scott II*, 356 Ga. App. at 163 (5) (emphasis supplied); *see Hogg*, 356 Ga. App. at 16-17 (2) (b) ("Based on the plain language of [OCGA § 16-6-4 (a)], the gravamen of the offense is the immoral and indecent act done to the child. Thus, each immoral or indecent act done to the victim in this case forms a 'unit of prosecution'"); *see also Frett v. State Farm Emp. Workers' Comp.*, 309 Ga. 44, 51 (3) (844 SE2d 749) (2020) ("Generally, we adhere to the principle of stare decisis, which directs the courts to stand by their prior decisions." (punctuation omitted)); *White v. State*, 305 Ga. 111, 121 (3) (823 SE2d 794) (2019) ("The older decisions of the Court of Appeals are binding on panels of that court until reversed or overruled by the Supreme Court or overruled by the Court of Appeals, and the Court of Appeals must adhere to the authority of those cases which it thinks state the correct principle of law. Anything to the contrary which may have been ruled by panels of the Court of Appeals in more recent decisions must yield to the older authorities from that court." (punctuation omitted)).

11

touches to a victim, during a single uninterrupted course of conduct, authorize multiple prosecutions and convictions for separate acts of child molestation."[22] And given the foregoing, we must now consider whether the criminal acts alleged in the relevant child-molestation counts "[w]ere part of a single course of conduct occurring in a relatively short time frame . . .[,]"[23] or whether those acts appear "to have occurred in discrete incidents over a relatively long period, [such that] . . . the State [is] authorized to charge the two crimes in two different units of prosecution."[24]

---

[22] *Scott II*, 356 Ga. App. at 162-63 (5).

[23] *Scott I*, 306 Ga. at 510 (2); *see Johnson*, ___ Ga. at ___ (3), No. S21G0673, 2022 WL 162799, at *3 (3) ("When a defendant enumerates a merger error after being convicted of multiple counts of the *same* crime, the correct merger analysis requires courts to ask whether those crimes arose from 'a single course of conduct' and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis."); *Cobb*, 356 Ga. App. at 191 (3) (b) (explaining that when "the acts of [child] molestation alleged in different counts were part of a *single course of conduct occurring in a relatively short time frame*, the unit of prosecution could determine if the defendant faces multiple consecutive . . . sentences or only one sentence" (punctuation omitted)); *see also Lucas*, 328 Ga. App. at 744 ("[W]ithout evidence of a legislative intent [as reflected by the plain meaning of the relevant text] to allow multiple punishments for the same course of conduct, acts that constitute a continuing criminal course of conduct are not punishable separately.").

[24] *Hogg*, 356 Ga. App. at 17 (2) (b) (punctuation omitted); *accord Cobb*, 356 Ga. App. at 192 (2) (b); *see Scott I*, 306 Ga. at 510 (2) ("In some of those cases, where the acts of child molestation appear to have occurred in discrete incidents, precisely identifying the applicable unit of prosecution may not affect the merger decision.").

12

(i) *Counts Two and Three.* Carr first argues counts two and three of the indictment should have merged for sentencing purposes because they both alleged that he committed the offense of child molestation by touching Ti. C.'s vaginal area and her breasts, respectively, during the same two-month period. But as explained by our Supreme Court, "it is an old and sound rule that error to be reversible must be harmful."[25] And here, although the trial court did not merge count two with count three for sentencing purposes, it *did* merge count two with count one,[26] such that Carr's conviction for count two was expunged and he was not sentenced for that child-molestation offense. Under these circumstances, Carr cannot show the trial court committed a reversible error in merging count two with count one, rather than merging count two with count three.[27]

---

[25] *Mobley v. State*, 265 Ga. 292, 294 (4) (455 SE2d 61) (1995); *accord Wyman v. State*, 267 Ga. App. 118, 120 (2) (598 SE2d 855) (2004) ("Harm and error must be shown to warrant reversal.").

[26] Count one of the indictment charged Carr with committing aggravated sexual battery against Ti. C. by "intentionally penetrat[ing] the sexual organ of [Ti. C.] with his finger . . . without [her] consent . . . ." Counts one through three alleged that the child-molestation offenses occurred between September 1, 2015, and October 31, 2015.

[27] *See Doss v. State*, 262 Ga. 499, 500 (2) (422 SE2d 185) (1992) (holding that trial court's failure to give a jury charge on self-defense for an underlying felony offense was harmless error because the offense was merged with a separate count for

13

(ii) *Counts Five and Six.* Carr also argues the trial court erred by failing to merge counts five and six of his indictment for sentencing purposes because they both alleged that he committed the offense of child molestation against Ta. C. by touching her vaginal area and breasts, respectively, during the same time frame.[28]

sentencing purposes); *Mitchell v. State*, 355 Ga. App. 7, 12 (2) (842 SE2d 322) (2020) ("[T]he vehicular homicide (Count 5) and the reckless driving (Count 6) charges at issue were merged into the first-degree vehicular homicide charge in Count 3 for purposes of sentencing. Consequently, any error in failing to give the accident jury charge was harmless and has not been shown to have contributed to the outcome at trial.").

[28] The sentences for counts five through ten were all imposed to be served concurrently with the sentence for another count, which may, as a practical matter, seem like any merger error was harmless because it did not lengthen or enhance Carr's overall sentence. But unlike count two, Carr *was convicted* of all the crimes alleged in those counts and received separate sentences for each of them. Thus, *if* the court erred by failing to merge any of these counts for sentencing purposes, then the errors were harmful because the substantive bar on double jeopardy applied. *See Maxwell v. State*, 311 Ga. 673, 676 (2) (859 SE2d 58) (2021) ("The rationale behind the bar to successive prosecutions is to prevent harassment of the accused. The bar to multiple convictions is referred to as the substantive aspect. The rationale behind the bar to multiple convictions is to prevent multiple and excessive punishments."); *Williams v. State*, 307 Ga. 778, 780 (1) (838 SE2d 235) (2020) (explaining that the substantive bar on double jeopardy protects defendants against multiple *convictions* and sentences for crimes arising from the same conduct); *see also Jackson v. State*, 310 Ga. 224, 229 (2) (c) (850 SE2d 131) (2020) (vacating the defendant's *conviction* and sentence for trafficking cocaine when the trial court erroneously failed to merge that conviction with a related felony murder charge, even though the sentences for those convictions were to be served concurrently).

14

Count five of the indictment charged Carr with committing child molestation by touching Ta. C.'s vaginal area between January 1, 2013, and September 1, 2015. And count six of the indictment charged him with committing child molestation during the same period by touching her breasts. And as detailed above, the evidence shows that Carr committed these discrete acts over a relatively long period of time. Specifically, Ta. C. testified that Carr would get into her bed and touch her "vagina area" during the day while she was in sixth grade (before left on the bus to go to school), but did so in the early mornings—while it was still dark outside—after she graduated sixth grade. And Ta. C. also testified that he touched her "chest area" mostly on top of her clothes, but sometimes under her clothes. Significantly, Ta. C. testified that the sexual abuse lasted from when she was in sixth grade until she was a sophomore in high school. As a result, a reasonable jury could have concluded that the sexual abuse alleged in counts five and six of the indictment were discrete, separate offenses occurring over a period of years, rather than during a single course of conduct taking place over a relatively short period of time. Under these

15

circumstances, the trial court did not err in failing to merge counts five and six for sentencing purposes.[29]

(b) *Sexual Battery: Counts Seven through Ten.* Carr further contends that his four sexual-battery convictions should have merged for sentencing purposes because the offenses occurred close in time and constituted an "uninterrupted course of conduct."

As an initial matter, unlike the statute criminalizing child molestation, it does not appear that either the Supreme Court of Georgia or this Court has yet determined the unit of prosecution provided for in OCGA § 16-6-22.1 (b)—the statute

---

[29] *See Spires v. State*, 357 Ga. App. 440, 449-50 (5) (850 SE2d 854) (2020) (holding that several child-molestation charges did not merge for sentencing purposes when "the various sexual contact occurred over an extended period of time; [the victim] testified that the sexual abuse occurred daily, including the time that she and [the defendant] had 'run away; together, and that she could not recall the number of times that she had performed oral sex on [the defendant]"); *Cobb*, 356 Ga. App. at 192 (3) (c) (holding that two child-molestation convictions did not merge for sentencing purposes when the indictment alleged the offenses occurred over several months, and evidence supported a conclusion that the criminal acts occurred over 20 times); *Anderson v. State*, 350 Ga. App. 369, 378 (3) (829 SE2d 453) (2019) (holding that because "the record [did] not support a finding that [the defendant] was convicted on more than one count for the same actions committed on a single day or during the same period of days, as would be required for the convictions to merge as a matter of fact[,]" the trial court did not err in failing to merge his convictions (punctuation omitted)).

16

criminalizing sexual battery.[30] As a result, to resolve this claim of error, we must

make that determination now. To that end, in interpreting any statute, we necessarily

begin our analysis with "familiar and binding canons of construction."[31] And in

considering the meaning of a statute, our charge is to "presume that the General

Assembly meant what it said and said what it meant."[32] Thus, we must afford the

statutory text its plain and ordinary meaning,[33] consider the text contextually,[34] read

the text "in its most natural and reasonable way, as an ordinary speaker of the English

---

[30] *See* OCGA § 16-6-22.1 (b) ("A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person.").

[31] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687 (2014).

[32] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation & punctuation omitted); *accord Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[33] *Deal*, 294 Ga. at 172 (1) (a); *see Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning[.]" (citation & punctuation omitted)).

[34] *See Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Martinez*, 325 Ga. App. at 273 (2) (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . .").

17

language would,"[35] and seek to "avoid a construction that makes some language mere surplusage."[36] And when the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[37] Finally, as our Supreme Court has emphasized "numerous times, the text of the statute itself best reflects the legislative choice of whether a particular course of conduct involves one or more distinct 'offenses' under the statute."[38]

Turning to the statute at issue, OCGA § 16-6-22.1 (b) provides that "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person."[39] And much like OCGA § 16-6-4 (a) (1), the child-molestation statute

---

[35] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Martinez*, 325 Ga. App. at 273 (2).

[36] *Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011); *accord Singletary*, 310 Ga. App. at 572.

[37] *Martinez*, 325 Ga. App. at 273 (2) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[38] *Johnson*, ___ Ga. at ___ (3), No. S21G0673, 2022 WL 162799, at *4 (3).

[39] *See* OCGA § 16-6-22.1 (a) (defining "intimate parts" to mean "the primary genital area, anus, groin, inner thighs, or buttocks of a male or female and the breasts of a female").

18

(which criminalizes "*any immoral or indecent act* to or in the presence of or with any child under the age of 16 years . . . ."),[40] OCGA § 16-6-22.1 (b) also generally criminalizes any "*physical contact* with the intimate parts of someone else without his or her consent[,]"[41] without specifying the circumstances under which a defendant is subject to a single conviction for multiple illegal acts. In determining the child-molestation statute provides for a single unit of prosecution, this Court reasoned that the word "any" in OCGA § 16-6-4 (a) (1) could be construed to provide that "each act of sexual contact to a part of the victim's body could demonstrate an intent to commit an independent and distinct abuse of the child victim that warrants a separate conviction and sentence, and signifies precisely the type of harm [the statute] seeks to prevent."[42] But we also explained that "an uninterrupted course of conduct involving multiple unauthorized acts of molestation *could* constitute a single offense [under the statute]."[43] Ultimately, we concluded that—in evaluating the language of OCGA § 16-6-4 (a) (1)—the General Assembly "has not, by clear and unambiguous

---

[40] (Emphasis supplied).

[41] (Emphasis supplied).

[42] *Scott II*, 356 Ga. App. at 158 (5).

[43] *Id.* (emphasis supplied).

19

language, provided that multiple touches to a victim, during a single uninterrupted course of conduct, authorize multiple prosecutions and convictions for separate acts of child molestation."[44] Thus, we construed the statute in favor of the defendant, finding that it did not authorize multiple child-molestation offenses under the circumstances.[45]

Although OCGA § 16-6-22.1 (b)—unlike OCGA § 16-6-4 (a) (1)—does not include the word "any," it likewise fails to indicate whether it authorizes multiple convictions for separate prohibited "physical touches" occurring during a single uninterrupted course of conduct. Significantly, unlike the child-molestation and sexual-battery statutes, the General Assembly has elsewhere "employed clear, unambiguous language with respect to the applicable unit of prosecution in numerous other contexts throughout the Georgia Code."[46] We must presume, then, that the

---

[44] *Id.* at 162-63 (5); *see Hogg*, 356 Ga. App. at 16-17 (2) (b) ("Based on the plain language of [OCGA § 16-6-4 (a)], the gravamen of the offense [of child molestation] is the immoral and indecent act done to the child. Thus, each immoral or indecent acts done to the victim in this case forms a 'unit of prosecution.'").

[45] *See Scott II*, 356 Ga. App. at 162-63 (5); *infra* note 49 & accompanying text.

[46] *Scott II*, 356 Ga. App. at 159 (5); *see* OCGA § 16-11-106 (e) ("Any crime committed in violation of subsections (b) and (c) of this Code section shall be considered a separate offense."); OCGA § 12-9-55 (d) ("Each day of continued unlawful registration shall be a separate offense."); OCGA § 34-8-256 (b) ("Each

20

General Assembly's failure to do so in OCGA § 16-6-22.1 (b) was "a matter of considered choice."[47]

As we explained in *Scott II*, if the General Assembly "fails to denote the unit of prosecution in the statute, as is the case here, [then] courts must resolve the ambiguity and are constrained to do so in favor of the defendant charged with having violated the statute."[48] Indeed, our Supreme Court has made clear that "a criminal statute must be construed strictly against the State, and if reasonable minds disagreed as to whether the statute is, in fact, ambiguous, the rule of lenity . . . require[s] us to

---

such act [of making a false statement or representation] shall constitute a separate offense."); OCGA § 43-50-45 (c) ("[E]ach act of an unlawful practice shall constitute a distinct and separate offense.").

[47] *Kemp v. Kemp*, 337 Ga. App. 627, 636 (788 SE2d 517) (2016) (punctuation omitted); *see Fair v. State*, 284 Ga. 165, 168 (2) (b) (664 SE2d 227) (2008) ("If the General Assembly had intended to require knowledge of the victim's status as a peace officer in order for the [statute] to apply, the statutory history shows that it knew how to do so. We must presume that its failure to do so was a matter of considered choice." (citation & punctuation omitted)); *Avila v. State*, 333 Ga. App. 66, 69-70 (775 SE2d 552) (2015) (noting that the General Assembly's use of the phrase "during the commission of the offense" in certain subsections of a criminal statute made clear that it knew how to specify that a disqualifying event must occur while the crime was in process, and the subsection at issue did not include such a limitation).

[48] *Scott II*, 356 Ga. App. at 160 (5).

21

interpret it in favor of the defendant."[49] And while the State concedes OCGA § 16-6-22.1 does not explicitly identify the unit of prosecution applicable to sexual battery, it nevertheless contends the statute unambiguously provides that "*each individual touch* to *each discrete body part* [constitute separate criminal offenses], even if the touches are close together in time." The State contends this is so because—unlike the child-molestation statute—OCGA § 16-6-22.1 specifically defines the body parts a defendant is prohibited from touching.[50] But regardless of the different body parts at issue, just like OCGA § 16-6-4 (a) (1), OCGA § 16-6-22.1 criminalizes certain types of conduct without indicating whether a defendant may be convicted of multiple offenses for each touch of the victim when they occur during a continuous course of contact.[51] And importantly, *Scott II* expressly held that when the General Assembly

---

[49] *Edvalson*, 310 Ga. at 8-9 (punctuation & citation omitted); *accord Coates*, 304 Ga. at 332 n.4.

[50] *See supra* note 39.

[51] The State contends OCGA § 16-6-22.1 is similar to a former version of OCGA § 16-7-1 (a), the burglary statute at issue in *Cordle v. State*, 345 Ga. App. 584 (814 SE2d 569) (2018). In *Cordle*, we noted that this version of the statute provided that "a person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any building . . . or any room or any part thereof." *Id.* at 585 (punctuation omitted). Ultimately, we held that the defendant could be convicted for two burglary offenses when he "separately entered two distinct businesses with the intent to commit theft inside each

22

fails to denote the unit of prosecution in this type of statute, there *is* an ambiguity in the statute as to the unit of prosecution, which must be resolved in favor of the defendant.[52] In sum, interpreting OCGA § 16-6-22.1 (b) in favor of Carr, as we must, we hold the statute provides for a single unit of prosecution, such that he may not be convicted or sentenced for multiple sexual-battery offenses committed during an uninterrupted course of conduct. With this in mind, we turn now to Carr's specific sexual-battery convictions.

(i) *Counts Seven and Eight*. Counts seven and eight charged Carr with committing sexual battery against Ta. C. by making physical contact with her breasts and vagina, respectively, without her consent. Both counts alleged the sexual abuse occurred on or about December 31, 2015. Although Ta. C. testified that Carr sexually

---

shop[,]" the businesses were owned and controlled by different individuals, and although they were housed in the same overall structure, they occupied different areas, were divided by a wall, and had doors leading to the outside. *See id*. at 585-86. But in *Scott II*, we distinguished the burglary statute at issue in *Cordle* from OCGA § 16-6-4 (a) (1) by explaining that, unlike the burglary statute, the child-molestation statute "does not contain any qualifying language with respect to acts of molestation involving different enumerated parts of a victim's body during a single uninterrupted course of conduct." *See Scott II*, 306 Ga. App. at 160 (5). Here, OCGA § 16-6-22.1 (b) also does not include such qualifying language, so we disagree with the State that *Cordle* has any bearing on the outcome of this appeal.

[52] *See supra* note 48 & accompanying text

23

abused her over a period of years, she did not provide any specifics regarding the abuse that occurred on that particular day. Indeed, the State failed to present any evidence as to how much time elapsed between the criminal acts, and it is unclear whether they occurred during the same interaction with Ta. C. As a result, the trial court erred in failing to merge counts seven and eight for sentencing purposes,[53] and we vacate Carr's convictions and sentences for counts seven and eight and remand

---

[53] *See Scott II*, 356 Ga. App. at 160-63 (5) (holding that three child-molestation convictions merged for sentencing purposes when the different sex acts occurred in the child's bedroom on the same day in a single course of conduct over a short period of time and noting that the victim did not testify has to how much time elapsed between touches); *Hogg*, 356 Ga. App. at 17 (2) (b) (holding that two counts of the indictment merged when they both charged the defendant with touching the victim's genitals in some way and evidence showed that these touches occurred during a single incident); *Gibbs v. State*, 340 Ga. App. 723, 732 (4) (798 SE2d 308) (2017) ("Because both Counts 3 and 4 charged [the defendant] with fleeing from [the same law-enforcement officer on the same day] after having been given a proper signal to stop . . ., the unit of prosecution under both counts is the same and the counts merged."); *McKee v. State*, 275 Ga. App. 646, 650-51 (5) (621 SE2d 61) (2005) (holding that criminal conduct constituted a single course of conduct spanning several days, not a separate offense of cruelty to children for each day, when the unit of prosecution was causing a child excessive physical or mental pain); *see also Scott II*, 356 Ga. App. at 161 (5) (noting that, in considering whether the charged criminal conduct constitutes two separate criminal acts, "the question of time more than any other circumstance seems to permeate all of the factors[,] [and] [i]t has its greatest value when it is a frame of reference for consideration of each of the other factors and elements" (punctuation omitted)).

the case for the trial court to convict and resentence him on only one of those counts.[54]

(ii) *Counts Nine and Ten*. Finally, counts nine and ten of the indictment charged Carr with committing sexual battery on Ta. C. in the same manner alleged in counts seven and eight, respectively, except they alleged the sexual abuse occurred the next day, on January 1, 2016. Similarly to counts seven and eight, these separate allegations of sexual battery allegedly occurred on the same day, Ta. C. did not testify regarding the length of time that elapsed between Carr touching her breasts and him touching her vagina, and it is unclear whether those criminal acts occurred during a single interaction.[55] Thus, we must also remand this case for the trial court to vacate one of these convictions and merge them for sentencing purposes.[56]

---

[54] *See Coates*, 304 Ga. at 332 (vacating the defendant's four convictions for being a felon in possession of a firearm when the trial court erred in failing to merge them for sentencing purposes and remanding the case for the trial court to convict and resentence him on only one of those counts); *Scott II*, 356 Ga. App. at 160-63 (5) (vacating the defendant's three child-molestation convictions and sentences, and remanding the case the for resentencing on a single count because those convictions merged as a matter of law).

[55] *See supra* note 53.

[56] *See supra* note 54.

For all these reasons, we affirm in part, vacate in part, and remand this case further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Mercier and Pinson, JJ., concur.*